STATE of Wisconsin, Plaintiff-Appellant,

v.

Michael STEARNS, Defendant-Respondent.

Court of Appeals

*No. 92–3302–CR. Submitted on briefs June 21, 1993.—Decided August 18, 1993.*

(Also reported in 506 N.W.2d 165.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *William L. Gansner* assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Gregory J. Meeker* of *Meeker & Assoc., S.C.* of Madison.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. While the police had Michael Stearns' apartment building surrounded and were waiting for him to exit the building to take him into custody, a police detective telephoned Stearns to encourage him to surrender. During the telephone conversation, Stearns made several statements which implicated him in the armed robbery that the police had sought to question him about. The issue on appeal is whether the trial court erred in granting Stearns' motion to suppress certain of the telephone statements because Stearns had not been given his *Miranda*[1] warnings by the police detective during the conversation.[2]

We conclude that Stearns' telephone statements do not implicate *Miranda* because the purpose of the

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] The state's appeal is taken pursuant to sec. 974.05(1)(d)3, Stats., which permits the state to appeal from an order which suppresses a confession or an admission.

detective's telephone conversation with Stearns was not to elicit an incriminating statement, but to secure Stearns' nonviolent surrender. We hold the statements are admissible. We reverse the trial court's order.

The facts are undisputed. On August 24, 1992, an armed robbery involving a handgun occurred at an Appleton Kohl's Food Store. The police identified Stearns as a suspect in the armed robbery almost immediately, and they sought to question him about his involvement. The police also sought to take Stearns into custody on two unrelated arrest warrants from Washington county.

The following day, the police surrounded and evacuated the apartment building where Stearns lived after receiving information of his location from his girlfriend. Detective Patrick Geneen then called Stearns from a cellular telephone in his squad car to encourage him to surrender to the officers waiting outside. Geneen identified himself as a police officer and told Stearns of the two outstanding warrants for his arrest. After Stearns responded, "There must be something else you want to talk to me about," Geneen told Stearns that he was also investigating the Kohl's armed robbery that occurred the night before. Stearns replied, "So, you've finally caught up to me."

Geneen asked Stearns repeatedly to surrender and, though he eventually did, he and Geneen conversed over the phone for about one hour. During their conversation, Stearns related his past criminal experiences and other events of his life. Geneen testified at the hearing on Stearns' motion to suppress that "[Stearns] was the primary individual doing the talking between the two of us without any prodding by me, except maybe occasionally I would ask him a question or two. He more or less told me his life history in that

847

hour's time." During their conversation the two discussed the Kohl's armed robbery, and Geneen asked Stearns questions concerning his involvement. While the two conversed and exchanged information, Stearns made numerous statements implicating himself in the robbery.[3]

At no time during the telephone conversation did Geneen give Stearns any *Miranda* warnings. When Stearns was given the warnings after he surrendered and was in police custody, he refused to waive his *Miranda* rights or to talk to the police.

In its oral ruling from the bench, the trial court found that Stearns was in custody because the "presence of those officers who he knew were outside and the intent of those officers, which had been communicated to him, to take him into custody on the warrant substantially restricted his freedom of movement and liberty." The court concluded that "a reasonable person in [Stearns'] position would consider himself in custody." The court also ruled that the statements Stearns made immediately after he was told of the existence of

---

[3] Specifically, Geneen testified that: (1) after asking how the police identified him as the Kohl's armed robbery suspect, Stearns said that the clerk at Kohl's could not have got the license plate number of his truck; (2) in referring to the store clerk after being told that the police had found and impounded his truck, Stearns stated, "That Bimbo last night, she said this and that, are you kidding. Can you believe what she said, are you kidding?"; (3) Stearns did not respond whether he was talking about the Kohl's robbery or a string of local robberies when he was asked by Geneen to explain his statement that his gun was not loaded when he did "those things"; (4) Stearns told him that the police would find a "wad of money" and a gun in the apartment; and (5) Stearns said he would take the money from the night before and throw it to an officer standing on the porch before leaving his apartment and surrendering to the police.

the unrelated Washington county warrants and that the police were investigating the Kohl's robbery were voluntary and not the result of interrogation. The court concluded further, however, that:

> [D]uring the bragging about the criminal history Geenen [sic] asked him if he had done something similar to the prior crime and there I find that to be interrogation.
>
> If something was meant to develop and, apparently, did develop as to incriminating statements, that was done in absence of Miranda warnings. I will suppress the final statements referred to or everything after he said, "So you finally caught up with me."
>
> In other words, I'm suppressing the rest of the matters objected to.

The state appeals the trial court's order suppressing certain of Stearns' telephone statements. Further facts will be provided as they become relevant to our discussion of the appellate issue.

Stearns contends that the failure of Geneen to give him *Miranda* warnings rendered his telephone statements inadmissible. The trial court's findings of evidentiary or historical facts will not be overturned unless clearly erroneous. *State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827, 832 (1987). However, questions of constitutional fact are subject to an independent appellate review and require an independent application of the constitutional principles involved to the facts as found by the trial court. *Id.* at 344, 401 N.W.2d at 832.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court concluded that where a defendant is subject to "custodial interrogation" certain procedural

safeguards are necessary to protect the defendant's fifth amendment privilege against self-incrimination. *See Rhode Island v. Innis*, 446 U.S. 291, 297 (1980). The Supreme Court was concerned in *Miranda* with "incommunicado interrogation of individuals in a police-dominated atmosphere," *Miranda*, 384 U.S. at 445, where the police actively sought to induce a defendant's confession. The Court concluded that in the absence of the now familiar warnings, statements made by a defendant during police custodial interrogation are inadmissible to establish the defendant's guilt. *See Berkemer v. McCarty*, 468 U.S. 420, 429 (1984). The *Miranda* Court reasoned that the interaction of custody and official interrogation "contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467.

Nonetheless, the Court stated that the warnings were not intended to unduly interfere with a proper system of law enforcement or to hamper traditional police investigatory functions. *See id.* at 481. "Fidelity to the doctrine announced in Miranda requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." *Berkemer*, 468 U.S. at 437. The *Miranda* Court emphasized:

> In announcing these principles, we are not unmindful of the burdens which law enforcement officials must bear, often under trying circumstances. . . . This Court, while protecting individual rights, has always given ample latitude to law enforcement agencies in the legitimate exercise of their duties. The limits we have placed on the interrogation process should not constitute an undue

interference with a proper system of law enforcement. As we have noted, our decision does not in any way preclude police from carrying out their traditional investigatory functions. Although confessions may play an important role in some convictions, *the cases before us present graphic examples of the overstatement of the "need" for confessions.* In each case authorities conducted interrogations ranging up to five days in duration despite the presence, through standard investigative practices, of considerable evidence against each defendant.

*Miranda,* 384 U.S. at 481 (emphasis added).

We conclude that the telephone conversation between Stearns and Geneen did not implicate the concerns which drive the *Miranda* decision. The police did not actively seek to induce Stearns to confess or to otherwise implicate himself in the armed robbery; rather, the police were trying to use the means most likely to convince Stearns to surrender peacefully without anyone being harmed. Stearns was identified by the police as a suspect within a short period of time after the armed robbery occurred. Concerned that he was still in possession of the handgun used in the armed robbery, the police surrounded and evacuated the apartment building where Stearns lived. Stearns was then contacted by telephone and, to avert a potentially dangerous situation, was encouraged to surrender without violence or resistance. Geneen identified himself as a police officer and conversed with Stearns for an hour to establish a relationship of trust aimed at convincing him to surrender peacefully. When the conversation turned to the Kohl's armed robbery, Stearns confirmed that he was in possession of a handgun and made several other statements implicating himself. When Stearns finally surrendered, he was

given *Miranda* warnings without delay and, upon refusing to waive his rights and talk to the police, was not interrogated.

Incriminating or not, the statements made by Stearns were not the product of a successful "incommunicado interrogation" in a police-dominated atmosphere in which the police actively sought to obtain Stearns' confession to the armed robbery. Rather, the statements were obtained while the police were trying to secure Stearns' nonviolent surrender. The situation did not involve the type of custodial setting aimed at securing a confession with which the *Miranda* Court was concerned.

Moreover, extending *Miranda* to the situation presented here could have deleterious consequences on police efforts to avoid escalating a situation that might otherwise be resolved peacefully. In *United States v. Mesa*, 638 F.2d 582 (3d Cir. 1980), the defendant moved to suppress several telephone statements made to an FBI agent while barricaded in a motel room. During his three-hour conversation with the agent, the defendant made several statements which implicated himself in a shooting the FBI was investigating. The court concluded that the defendant's statements were not objectionable on *Miranda* grounds. *Id.* at 588. We quote at length:

> To extend the *Miranda* rule beyond its rationale by requiring suppression in this case would place law enforcement officials in an extremely difficult position. . . . Although I recognize that the purpose behind suppressing statements made during custodial interrogation without *Miranda* warnings is to protect the individual's fifth amendment rights and not to punish the police, extending *Miranda* to this situation would put law enforce-

ment officials to a delicate and difficult choice. When confronted with an armed, barricaded suspect who is possibly holding hostages, their attention would be diverted from what should be their primary purpose—that of using the means most likely to convince the suspect to surrender peacefully without harming anyone in the area. They would be forced to consider the possibility that the suspect might make a statement that the government eventually would want to introduce at trial, and then they would have to assess whether he would be likely to react violently to the antagonistic-sounding *Miranda* warnings. . . .

Furthermore, implicit in the *Miranda* holding is the notion that the police are in a position to give a suspect his warnings. In this situation, however, no one could suggest that [the agent] should have given [the defendant] *Miranda* warnings during their conversation. [The agent] needed to establish a relationship of trust with [the defendant] in order to convince him to surrender without harming himself or others. I think that the *Miranda* rule should be confined to those situations where the police have a fair choice in deciding whether to give the warnings. It should not be expanded to encompass the present situation where the giving of warnings could have disastrous effects on the suspect and perhaps on others in the vicinity. Because this situation does not involve the type of custodial setting that concerned the *Miranda* Court, I conclude that the statements made by [the defendant] are not subject to objection on *Miranda* grounds.

*Mesa*, 638 F.2d at 588–89.

We find the Third Circuit's reasoning persuasive. We conclude that Stearns' telephone statements do not implicate *Miranda* because the purpose of the police detective's telephone conversation with Stearns was to

secure his nonviolent surrender, not to induce him to confess or otherwise encourage him to incriminate himself. This is so even if custody and interrogation technically existed here under *Miranda*.[4] The courts should not presume to impose *Miranda* requirements on the police in such supercharged situations where the constitutional concerns of *Miranda* are not present. The police—not judges—are better equipped and trained to deal with such matters.

Thus, we need not look for an exception to *Miranda* in this case. *See, e.g., New York v. Quarles*, 467 U.S. 649, 655–56 (1984). Instead, we hold on a threshold basis that the facts of this case do not present a *Miranda* situation. We reverse the trial court's order suppressing the statements.

Our holding should not be overread. If the police compel a defendant to incriminate himself by psychological trickery or other police overreaching, or create a situation such as the one presented here to circumvent the giving of *Miranda* warnings, the statements obtained by the police may be inadmissible on fifth amendment grounds. *See Mesa*, 638 F.2d at 589 (holding that the statements should be closely scrutinized for voluntariness in such a situation even though *Miranda* warnings are not a prerequisite to their admissibility). We simply conclude under the facts of this case that Stearns' telephone statements to Geneen

---

[4] Thus, we do not quarrel with the trial court's conclusions that a reasonable person in Stearns' situation would consider himself in custody and that, viewed from the four corners of the conversation between the detective and Stearns, interrogation about the Kohl's armed robbery took place.

are not barred as evidence because the concerns addressed by *Miranda* are not present here.[5]

*By the Court.*—Order reversed.

___

[5] Because of the result we reach, we need not address the state's arguments that Stearns was not in custody or subject to an interrogation during the telephone conversation and that Stearns' statements are admissible under the public safety exception to *Miranda*'s exclusionary rule.