**Manfried F. WEST, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A-5787.

Court of Appeals of Alaska.

Sept. 20, 1996.

---

Bethany P. Spalding, Assistant Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Appellant.

James P. Doogan, Assistant District Attorney, Harry L. Davis, District Attorney, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION.

BRYNER, Chief Judge.

Manfried F. ("Fred") West was convicted by a jury of arson in the second degree, AS 11.46.410, and unlawful evasion in the first degree, AS 11.56.340. On appeal, West claims that the superior court erred in failing to suppress certain statements he made to the police shortly before his arrest, in refusing to sever the two charges against him, in declining to change his trial venue from Fairbanks, and in admitting evidence of other acts of misconduct by him. We affirm.

On the night of May 19, 1994, West was involuntarily discharged from the Regional Center For Alcohol and Other Addictions' (RCAOA), a Fairbanks treatment program in which West had been allowed to reside and participate pending sentencing on a forgery charge for which he had recently been convicted and pending execution of a sentence recently imposed upon revocation of West's probation for an earlier burglary conviction. As a condition of his pre-sentence release to RCAOA, West had been directed to report to jail—the Fairbanks Correctional Center (FCC)—in the event his participation in RCAOA terminated for any reason. West contacted FCC and was told to call back in the morning, when staff members would have access to his file.[1]

West failed to contact or report to FCC the following day. Instead, he went to a cabin outside Fairbanks that belonged to his brother, where he remained secluded until the Alaska State Troopers learned of his whereabouts more than a week later, on May 27. The troopers, seeking to arrest West for unlawful evasion, surrounded his cabin; they then established telephone contact with him and advised him to surrender. West refused, stated that he was armed, and threatened to blow up the cabin.

For three and one-half hours, Trooper Sergeant James McCann spoke to West on the telephone, attempting to negotiate West's surrender. West refused to come out, alternating between threats to blow the cabin up and attempts to negotiate favorable terms of surrender with McCann. During these negotiations, West told McCann that he (West) had shot and killed Joe Vogler;[2] West offered to tell McCann where Vogler's body was buried.

Ultimately, however, the negotiations proved fruitless. West terminated the telephone conversation, telling McCann: "It's all over bud ... this place is gonna blow ... the best you could do ... is get the hell outa here ... the dynamite is in the living room." Smoke and flames soon engulfed the cabin. Firefighters, fearing the presence of weapons and explosives, were forced to stand by until the cabin had nearly burned to the ground. After the fire was extinguished, troopers searched the remains of the cabin and found West in a protected area of the foundation. West was not seriously injured and was booked into FCC. He was eventually charged with second-degree arson and first-degree unlawful evasion.

Prior to trial, West moved to suppress the statements he made to McCann during their telephone negotiations. West argued that his conversation with McCann amounted to custodial interrogation and that he therefore should have been informed of his Miranda[3] rights. West also argued that McCann's failure to contact West's counsel before conversing with West amounted to a violation of

---

1. West also made an unsuccessful attempt to call the lawyer who represented him in the forgery and probation revocation matters. A lawyer who shared office space with West's lawyer told West that West's lawyer was out of town and advised West to contact him when he returned.

2. Vogler, a well-known and controversial local political figure, had disappeared in 1993; his disappearance had received widespread publicity, and the troopers had previously questioned West in connection with Vogler's disappearance.

3. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

West's constitutional right to counsel.[4] The superior court denied West's suppression motion.

West renews these arguments on appeal. Both arguments lack merit.

■ Although West's *Miranda* claim presents a question of first impression in Alaska, the issue has frequently been considered by courts in other jurisdictions. For reasons that seem sound upon reflection, these courts unanimously conclude that custodial interrogation requiring *Miranda* warnings does not occur when police communicate with a barricaded suspect who holds them at bay.[5] The superior court expressly relied on this line of cases in rejecting West's *Miranda* argument. On appeal, West fails to distinguish, or even mention, these cases, and he cites no contrary authority. We find these cases persuasive and uphold the superior court's conclusion that West was not subjected to custodial interrogation.

■ West's right-to-counsel argument is equally groundless. The constitutional right to counsel is case specific: "[T]he fact that [the right] has attached in a particular case does not entitle the accused to demand representation in connection with factually and legally unrelated matters in which the state has made no accusation and taken no adversary action." *Carr v. State*, 840 P.2d 1000, 1005 (Alaska App.1992).[6] West was represented by counsel in connection with his probation revocation action and his recent forgery conviction. The troopers' contact with West related to a new crime: the unlawful evasion that resulted from West's failure to return to custody after being discharged from RCAOA. Since West had not yet been charged with or arrested for that crime, his right to counsel had not yet attached.[7] Accordingly, the superior court properly concluded that the troopers had no duty to contact the attorney who represented West in the other cases. ·

■ Prior to trial, West also moved to sever the two charges against him, arguing that they had been improperly joined. The superior court denied West's motion. West claims that this ruling was error. Our decision in *Newcomb v. State*, 800 P.2d 935 (Alaska App.1990), is dispositive of West's claim.[8] We conclude that West's charges were properly joined under Alaska Rule of Criminal Procedure 8(a)(3), and we find no error in the denial of West's motion to sever the charges as improperly joined.[9]

4. *See* U.S. Const. amend. VI; Alaska Const. art. I, § 11.

5. *See, e.g., United States v. Mesa*, 638 F.2d 582, 589 (3rd Cir.1980); *Rock v. Zimmerman*, 543 F.Supp. 179, 191 (D.Pa.1982); *State v. Sands*, 145 Ariz. 269, 700 P.2d 1369, 1373 (1985); *People v. Brewer*, 720 P.2d 583, 586 (Colo.App.1985); *People v. Treier*, 165 Misc.2d 665, 630 N.Y.S.2d 224, 227 (N.Y.Co.Ct.1995); *People v. Manzella*, 150 Misc.2d 956, 571 N.Y.S.2d 875, 878–79 (N.Y.Sup.Ct.1991); *State v. Pejsa*, 75 Wash.App. 139, 876 P.2d 963, 969 (1994); *State v. Stearns*, 178 Wis.2d 845, 506 N.W.2d 165, 167 (App. 1993).

6. *See also Maine v. Moulton*, 474 U.S. 159, 180 & n. 16, 106 S.Ct. 477, 489 & n. 16, 88 L.Ed.2d 481 (1985); *McLaughlin v. State*, 737 P.2d 1361, 1364 (Alaska App.1987).

7. Nor had West retained or had an attorney appointed for him in connection with the unlawful evasion; for this reason, *United States v. Thomas*, 474 F.2d 110 (10th Cir.1973), which West relies on, is inapposite. Moreover, *Thomas* is predicated on an attorney's violation of the canons of ethics, not on a violation of the constitutional right to counsel by the police. We have never held that suppression would be an appropriate remedy for a violation of Alaska's Code of Professional Responsibility—an issue West fails to address. *See Kochutin v. State*, 875 P.2d 778, 780 (Alaska App.1994), adopting *Kochutin v. State*, 813 P.2d 298, 311 n. 5 (Alaska App.1991) (Bryner, C.J., dissenting).

8. Newcomb escaped from Wildwood Correctional Center. Five months later, he was located in Anchorage. In the course of his arrest, Newcomb shot two officers. Newcomb was charged with attempted murder, assault, misconduct involving weapons, and escape. *Newcomb*, 800 P.2d at 937. Over Newcomb's objections, all charges were tried together under Alaska Rule of Criminal Procedure 8(a)(3). Newcomb appealed the denial of his motion to sever. *Id.* at 942. On appeal, we noted the "obvious nexus" between the escape and the other charges, and we upheld joinder of the charges as "connected together" under Rule 8(a)(3). *Id.* at 942–43.

9. Below, West contended only that severance was warranted because the two charges were improperly joined; the only theory of prejudice he advanced was that admission of evidence of his unlawful evasion would prejudice the jury's consideration of the arson charge. In his open-

West next argues that the superior court erred in failing to change the venue of his trial from Fairbanks to some other community. Approximately three months before his case actually went to trial, West filed a motion for a change of venue, asserting that extensive pretrial publicity would prevent selection of an impartial jury in Fairbanks. The superior court denied West's motion without prejudice to renewal following jury voir dire. At trial, after jury voir dire, West exercised only seven of his ten peremptory challenges; he then accepted the empaneled jury and failed to renew his earlier motion to change venue.

■ The superior court did not err in denying, without prejudice to post-voir-dire renewal, West's pre-trial motion for a change of venue:

> Whether pretrial publicity is so prejudicial and so pervasive that no [impartial] jury could be selected to try a particular case in a particular locale is a determination that is exceedingly difficult to make prior to the questioning of potential jurors. Therefore almost without exception trial courts have been permitted the discretion to rely on voir dire rather than their own speculation as to the impact of pretrial publicity.

*Mallott v. State*, 608 P.2d 737, 746 (Alaska 1980); *see also Chase v. State*, 678 P.2d 1347, 1350 (Alaska App.1984) ("[A] trial judge will seldom be found to have abused his discretion in denying a motion for change of venue prior to jury *voir dire* ").

■ West's subsequent failure to renew the motion precludes him from arguing that the court erred in failing to change venue upon conclusion of voir dire. *Mallott*, 608 P.2d at 748; *Alexander v. State*, 838 P.2d 269, 273 (Alaska App.1992); *Wylie v. State*, 797 P.2d 651, 656 (Alaska App.1990).[10] The superior court did not err in failing to change venue.

West lastly argues that the trial court erred in allowing Trooper McCann to testify that West had admitted killing Joe Vogler. West contends that this testimony was evidence of other misconduct, that its only relevance was to establish West's criminal propensity, and that its admission was therefore barred under Alaska Rule of Evidence 404(b).[11] West alternatively contends that this evidence, even if marginally relevant to some issue other than criminal propensity, was unduly prejudicial and should have been excluded under Evidence Rule 403.[12]

■ West's argument lacks merit. At trial, West affirmatively defended against the unlawful evasion charge by claiming that his failure to turn himself in to jail was the result of a misunderstanding. West defended against the arson charge by claiming that

---

ing brief, West renews the claim he raised below, arguing only that the two charges were improperly joined. In his reply brief, however, West belatedly suggests that severance should have been granted even if his charges were properly joined, because evidence of his arson would not have been cross-admissible against him in a separate trial for unlawful evasion. West insists, again for the first time, that joinder prejudiced his attempt to defend against the unlawful evasion charge. West does not specify how. Given West's failure to assert this argument below or in his opening brief, we decline to address it.

**10.** Pre-trial publicity relating to West's case occurred well in advance of his trial date and apparently revealed no significant information that was excluded from evidence at trial. Selection of West's jury required the questioning of only 35 prospective jurors. Although almost all members of the jury panel had heard or read something about West's case, only two panel members indicated that they had formed opinions that they could not set aside; both were disqualified for cause. As we have already mentioned, West used only seven peremptory challenges, leaving three challenges unused. These circumstances are not conducive to a finding of plain error, even assuming West's failure to renew the change of venue motion was not tactical.

**11.** A.R.E. 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**12.** A.R.E. 403 provides:

> Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

the cabin fire was accidental. As correctly recognized by the trial court, the fact that West claimed responsibility for the death of Vogler minutes before the cabin burst into flames is highly relevant to establish West's state of mind, the absence of misunderstanding or accident, and the presence of a strong motive for West to set fire to a cabin in which he was seemingly trapped—an act of extraordinary desperation that, in the absence of some plausible motive or explanation, might easily have seemed accidental.

■ The trial court did not abuse its discretion in concluding that this evidence was relevant for purposes other than to show West's criminal propensity; nor did the court abuse its discretion in deciding that the probative value of this evidence outweighed its potential for prejudice.[13] The court twice gave the jury an appropriate limiting instruction. We conclude that admission of this evidence was not error.

West's conviction is AFFIRMED.

**13.** *See Braham v. State,* 571 P.2d 631, 640–41 (Alaska 1977); *Miller v. State,* 778 P.2d 593, 597 (Alaska App.1989); *Ciervo v. State,* 756 P.2d 907, 911 (Alaska App.1988).