UNITED STATES, Appellee

v.

**Mauricio V. MOSES, Gunnery Sergeant
U.S. Marine Corps, Appellant.**

No. 95–1067.
Crim.App. No. 93–1663.

U.S. Court of Appeals for
the Armed Forces.

Argued May 29, 1996.

Decided Sept. 24, 1996.

For Appellant: Major R.K. Stutzel, USMC (argued); Lieutenant William M. Schrier, JAGC, USNR.

For Appellee: Captain D.K. Margolin, USMC (argued); Colonel Charles Wm. Dorman, USMC, and Commander D.H. Myers, JAGC, USN (on brief).

*Opinion of the Court*

BRYSON, Circuit Judge: [1]

Appellant, Gunnery Sergeant Mauricio V. Moses, was tried in December 1992 by a

---

1. Judge William C. Bryson of the United States Court of Appeals for the Federal Circuit, sitting

general court-martial composed of officer and enlisted members assembled at Kaneohe Bay, Hawaii. Pursuant to his pleas, appellant was convicted of violating a Navy regulation and breaching the peace, in violation of Articles 92 and 116, Uniform Code of Military Justice, 10 USC §§ 892 and 916, respectively. Contrary to his pleas, appellant was convicted of attempted premeditated murder and housebreaking, in violation of Articles 80 and 130, UCMJ, 10 USC §§ 880 and 930, respectively. Appellant was sentenced to a dishonorable discharge, confinement for 20 years, total forfeitures, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged, but suspended forfeiture of $300 pay per month to provide for allotments to appellant's minor dependents and suspended confinement in excess of 15 years. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion dated June 2, 1995.

This Court granted review of the following issue of law:

> WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS STATEMENTS MADE TO AUTHORITIES DURING THE SIEGE AT APPELLANT'S HOME.

After consideration of the briefs and the oral argument,[2] we hold that the military judge correctly ruled the statements admissible, because appellant was not entitled to an advisement of his rights under Article 31(b), UCMJ, 10 USC § 831(b), before he made the statements at issue.

I

The events that led to appellant's conviction occurred during a 26–hour period between August 30 and September 1, 1992. On the evening of August 30, appellant broke into the Navy housing unit where his estranged wife was living. He waited there for her to return home from a military club where she and her mother, Ms. Pauline Frazer, were playing bingo. Ms. Frazer left the club early and returned to the residence. After she arrived, appellant confronted her and ultimately shot her in the hand and abdomen with a handgun. When police arrived at the scene, Ms. Frazer managed to escape. Appellant, however, remained inside, refused to surrender, and held law enforcement authorities at bay for more than 24 hours. Eventually, tear gas and pepper gas forced appellant to end the standoff and surrender.

In the course of the siege, Special Agent (SA) Anthony Titra of the Naval Investigative Service (NIS) engaged appellant in discussions over the telephone and tried to induce him to surrender peacefully. During those conversations, appellant continually threatened violence if anyone tried to enter the residence. After being summoned to the scene by the NIS, Chief Petty Officer Ramon Lavigne, a friend of appellant's, also talked with appellant over the telephone. At SA Titra's request, CPO Lavigne asked appellant whether he had been drinking or was tired, what weapons he had with him, and whether he was holding any hostages. At one point, appellant told CPO Lavigne (falsely, as it turned out) that he had a machine gun. He also made statements to both SA Titra and CPO Lavigne regarding the shooting, essentially claiming that Ms. Frazer had tried to shoot him and that he had wrested the gun from her and shot her. In response to appellant's statements about the shooting, SA Titra told appellant, "Well, that sounds like self-defense to me. You need to come out and let's talk about this. Let's rectify this situation. You don't need to stay in the house. Come on out and talk to me, and we'll get this thing resolved."

by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

**2.** This case was argued at United States Marine Corps Base, Quantico, Virginia, on May 29, 1996, without objection from the parties involved. The United States Court of Appeals for the Armed Forces conducts hearings such as this outside its permanent courthouse in Washington, D.C., as part of its "Project Outreach," a public awareness project that demonstrates not only the operation of a federal appellate court but also the quality and effectiveness of the criminal justice system of our Armed Forces under the Uniform Code of Military Justice. *See United States v. Raymond*, 38 MJ 136, 137 n. 1 (CMA 1993).

During the siege, neither SA Titra nor CPO Lavigne gave appellant the warnings contained in Article 31(b): that he was not required to make a statement as to any offense of which he was suspected and that any statement he made could "be used as evidence against him." SA Titra gave appellant those warnings after appellant was taken into custody, and appellant declined to make a statement at that time.

At trial, appellant moved to suppress the statements he made to SA Titra and CPO Lavigne during the siege on the ground that their exclusion was required by Article 31(d), which renders inadmissible any statement obtained as a result of a failure to give the warnings required by Article 31(b). Following an evidentiary hearing, the military judge denied the motion to suppress, holding that the statements appellant made during the siege were admissible because the questioning that led to those statements was conducted for "public safety" reasons and was designed to induce appellant "to surrender without risking injury to himself or others."

The Court of Criminal Appeals affirmed appellant's convictions. With respect to appellant's contention that the military judge erred in denying his motion to suppress the statements he made during the siege, the court held that to apply Article 31(b) to siege or hostage situations would extend the provision well beyond its drafters' intent. Unpub.op. at 10.

## II

 Appellant argues that the statements he made to SA Titra and CPO Lavigne regarding the shooting of his mother-in-law were inadmissible under Article 31(d), because SA Titra and CPO Lavigne questioned him during the siege without giving him the warnings required by Article 31(b).[3]

The military judge ruled that suppression of appellant's statements was not required in this case, because the law enforcement officers were attempting to end the siege peacefully and their efforts, including their questioning of appellant, thus fell within a "public safety exception" to Article 31. We find it unnecessary to decide whether the evidence in this case is admissible under an implied exception to the mandates of Article 31(b), because we conclude that Article 31(b) was not applicable at all to the discussions between appellant and those who conversed with him during the siege.

 Article 31(b) provides:

No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

This Court has held that Article 31(b) applies only to the questioning of a suspect or an accused pursuant to "an official law-enforcement investigation or disciplinary inquiry." *United States v. Shepard*, 38 MJ 408, 411 (CMA 1993); *United States v. Loukas*, 29 MJ 385, 387 (CMA 1990); *United States v. Gibson*, 3 USCMA 746, 752, 14 CMR 164, 170 (1954). For example, this Court in *United States v. Duga*, 10 MJ 206, 211 (CMA 1981), held that statements made in response to questions posed by a friend of the accused, who was not acting in an official capacity or at the behest of investigative authorities, were not within the purview of Article 31(b). Likewise, in *United States v. Fisher*, 21

---

3. Incriminating statements made by an accused in response to custodial interrogation ordinarily may not be admitted in evidence unless the questioning is preceded by proper warnings. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although *Miranda* has been held applicable to military cases, *see United States v. Tempia*, 16 USCMA 629, 631, 37 CMR 249, 251 (1967), *Miranda* is inapplicable here because appellant was not in custody during the siege. *See United States v. Mesa*, 638 F.2d 582, 588–89 (3d Cir.1980) (opinion of Seitz, C.J.) (barricaded person is not "in custody" for purposes of *Miranda*); *State v. Sands*, 145 Ariz. 269, 700 P.2d 1369, 1373 (App.1985) (person barricaded in his home is not "in custody"); *People v. Brewer*, 720 P.2d 583, 585–86 (Colo.App.1985) (same); *State v. Pejsa*, 876 P.2d 963, 968–69 (Wash.App. 1994) (suspect in a siege setting is not in custody).

USCMA 223, 44 CMR 277 (1972), this Court held that a military doctor was not required to give Article 31(b) warnings before asking questions for the purpose of diagnosing a patient. More recently, Article 31(b) warnings were held not to be required when the accused, a crewmember who was acting irrationally on a military aircraft, was asked whether he had taken any drugs; this Court held that the questions were not asked as part of an official law enforcement investigation but, instead, were asked in an "operational context" to ascertain whether there was any danger to the aircraft and the crew. *United States v. Loukas,* 29 MJ at 389.

In a case somewhat analogous to this one, *United States v. Vail,* 11 USCMA 134, 28 CMR 358 (1960), authorities caught the accused stealing weapons from a military warehouse. The arresting officer, who had seen the accused and his accomplices carry one load of weapons out of the building minutes earlier, apprehended him and asked him at gunpoint to turn over the weapons, but did not advise him of his Article 31 rights. The accused objected at trial to the admission of the weapons into evidence, arguing that the weapons were the product of his response to the officer's questioning. This Court held that Article 31(b) did not apply in that setting:

> [T]he demand [for the location of the weapons] was not made at a time after the offense in an effort to obtain evidence from the accused which might help convict him. It was addressed to the accused as a part of his apprehension in the actual commission of the offense. Common sense tells us the arresting officer cannot be expected to stop everything in order to inform the accused of his rights under Article 31. On the contrary, in such a situation he is naturally and logically expected to ask the criminal to turn over the property which he has just stolen.

11 USCMA at 135–36, 28 CMR at 359–60.

Like the demand for the stolen goods during the arrest in *Vail,* negotiations to end an armed standoff are normally designed to bring criminal conduct to an end rather than to obtain evidence for possible prosecution.

*Cf. United States v. Mesa,* 638 F.2d 582, 589–90 (3d Cir.1980) (Adams, J., concurring) (conversations between agent and barricaded suspect did not constitute "interrogation"); *State v. Reimann,* 19 Kan.App.2d 431, 870 P.2d 1346, 1350 (1994) (questioning not "functional equivalent" of interrogation when police in siege situation were trying to persuade defendant not to shoot himself); *State v. Stearns,* 178 Wis.2d 845, 506 N.W.2d 165, 167–68 (App.1993) (negotiations not "interrogation" of suspect, because police purpose was "to secure his nonviolent surrender, not to induce him ... to incriminate himself"). The dispositive question in this case is, therefore, whether the discussions with appellant during the siege were truly negotiations designed to end the standoff, rather than attempts to obtain incriminating statements to be used against him at trial.

After hearing testimony from SA Titra and CPO Lavigne regarding their discussions with appellant, the military judge found that the law enforcement officers initiated contact with appellant in order "to calm him down and get him to surrender without risking injury to himself or others." The judge further found that the conversations with appellant during the siege were not "an interrogation in the classical sense" and that the agents did not "intend[ ] to elicit any sort of incriminating response," but "were simply attempting to control the situation."

■ "In reviewing a military judge's ruling on a motion to suppress, we review fact-finding under the clearly-erroneous standard and conclusions of law under the *de novo* standard." *United States v. Ayala,* 43 MJ 296, 298 (1995). We hold that the military judge's factual findings in this case are well supported by the evidence and that, based on those factual findings, the military judge did not commit legal error in refusing to grant appellant's motion to suppress.

SA Titra testified at the hearing that his purpose throughout the discussions was to engage appellant in dialogue, to establish a rapport with him, and to encourage him to surrender. He explained that the questioning was designed to calm appellant and obtain information necessary for ending the

siege peacefully. He also testified that he did not ask appellant about the shooting, but that appellant volunteered his account of what had happened. Finally, SA Titra stated that giving appellant Article 31(b) warnings probably would have caused appellant to end the dialogue, thereby terminating the attempt to bring the siege to a peaceful conclusion.

CPO Lavigne testified that after he offered to talk to appellant, the NIS allowed him to participate in the negotiations. He explained that the only specific questions the NIS requested him to ask appellant involved what type of weapons appellant had with him, whether appellant was drinking alcohol, how tired appellant was, and whether there was anyone else in the residence. He testified that he was not asked to elicit a confession from appellant and that he did not attempt to do so. The discussions, he testified, were designed to encourage appellant to end the standoff peacefully, not to investigate what had transpired between appellant and his mother-in-law.

The record evidence in this case supports the military judge's factual finding that the negotiations by SA Titra and CPO Lavigne with appellant during the standoff were solely intended to end the siege and were not undertaken pursuant to a law enforcement investigation or a disciplinary inquiry. For that reason, the telephone conversations with appellant were not subject to Article 31(b). Because, under the applicable standard of review, the military judge did not commit factual or legal error in ruling on the motion to suppress, he did not abuse his discretion by declining to suppress the statements appellant made during the siege.

### III

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and GIERKE concur.