**UNITED STATES**

v.

**Christopher A. BRUCI, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 98 01793.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 13 May 1998.

Decided 29 Feb. 2000.

LT Omar R. Lopez, JAGC, USNR, Appellate Defense Counsel.

Maj Mark K. Jamison, USMC, Appellate Government Counsel.

Before DORMAN, Senior Judge, TROIDL, Senior Judge, and ROLPH, Appellate Military Judge.

ROLPH, Judge:

A military judge, sitting alone as a general court-martial, convicted the appellant, in accordance with his voluntary pleas of guilty, of unauthorized absence, wrongful appropriation of a Government vehicle, and larceny of $10.00 from a fellow Marine, in violation of Articles 86 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 921 (1994). Contrary to his pleas, the military judge also found the appellant guilty of three specifications of failing to obey three separate lawful written orders in violation of Article 92, UCMJ, 10 U.S.C. § 892. The appellant was sentenced to 8 months confinement, total forfeiture of pay and allowances, reduction to E–1, and a bad-conduct discharge. In October 1998, the convening authority approved the sentence as adjudged and, except for the bad-conduct discharge, ordered it executed.

We have carefully reviewed the record of trial, the appellant's four assignments of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the appellant's sub-

stantial rights was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

## Unlawful Command Influence

In his first assignment of error, the appellant claims he was the victim of "unlawful command influence" arising from alleged prosecutorial misconduct, based upon the trial counsel allegedly conditioning the award of a pretrial agreement upon the appellant unconditionally waiving his right to litigate an Article 10, UCMJ, 10 U.S.C. § 810, speedy trial motion. *See* Appellant's Brief of 25 June 1999 at 2–8; *and see* discussion of Assignment of Error III, *infra*. We review any allegation of unlawful command influence *de novo. United States* v. *Villareal,* 52 M.J. 27, 30 (1999).

Although three separate pretrial agreement offers were proposed and tendered to the Government by the appellant, no actual agreement was ever entered into in this case. Each offer was the same; the appellant would plead guilty to all charges and specifications in return for the convening authority referring his case to a special (vice a general) court-martial.[1] Each of the appellant's offers was ultimately rejected.

At trial, the appellant raised and unsuccessfully litigated his speedy trial motion prior to his voluntary entry of pleas of guilty. The record is completely devoid of any support for appellant's assertion that trial counsel conditioned the grant of any "possible" pretrial agreement upon the appellant's waiver of his speedy trial motion. The few references to pretrial negotiations contained in the record indicate only that trial defense counsel offered a plea agreement on three separate dates (2 March, 5 March, and 14 April 1998). *See* Appellate Exhibit XXVIII at 1–4. In his testimony on the speedy trial motion, the Staff Judge Advocate for NAS Patuxent River, Maryland, mentions receiving several defense pretrial agreement offers. Record at 53–56. Trial defense counsel erroneously initiated pretrial agreement discussions with the appellant's commanding officer, who was not the convening authority,

offering to plead guilty in return for referral of charges to a special court-martial. Trial defense counsel ultimately made this same plea offer to the actual convening authority, following the Staff Judge Advocate's request that defense counsel direct such communications to the convening authority. Appellate Exhibit XXVIII. The terms of the offer remained the same in each letter, and none referenced a speedy trial motion. The convening authority rejected the pretrial agreement offers, making it abundantly clear that he intended the appellant's case to be tried at a general court-martial. *See* Staff Judge Advocate Recommendation of 25 Aug. 1998 at ¶ 3(a). The appellant and his counsel also missed the deadline for accepting a Government counter-offer that required the appellant to plead guilty at a general court-martial. *Id.*

■ "An accused does not have a constitutionally guaranteed right to plead guilty." *Villareal,* 52 M.J. at 30 (*citing Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). Within the military justice system, "discretion to plea bargain is a policy and leadership decision; it is not a legal decision subject to the remedies that [appellate courts offer]." *Villareal,* 52 M.J. at 31. The appellant has failed to present any affidavits, concrete evidence, or other support for his allegations. We note first that there was never a consummated written or oral pretrial agreement in this case, and no affirmative act or omission on the part of the appellant equating to detrimental reliance. See, e.g., *United States v. Penister,* 25 M.J. 148, 152 (C.M.A.1987)(findings and sentence set aside when Government withdrew from *existing* pretrial agreement after trial counsel encouraged military judge to find accused's pleas improvident). At most, there were only ongoing pretrial "negotiations." Second, there is nothing beyond the appellant's allegation to substantiate his claim that the prosecutor was improperly conditioning any pretrial agreement upon the appellant's waiver of the right to bring his speedy trial motion.

---

1. No additional sentence protection was to be afforded if the case was in fact referred to a special court-martial.

While recognizing that the threshold is generally low for triggering an inquiry into allegations of improper command influence, we find that the appellant has not even come close to meeting his minimum burden of producing sufficient evidence to raise this issue. *See United States v. Ayala*, 43 M.J. 296, 299–300 (1995); *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A.1994); *United States v. Levite*, 25 M.J. 334, 341 (C.M.A. 1987)(Cox, J., concurring). "[G]eneralized, unsupported claims of [improper influence] will not suffice to create a justiciable issue." *Green v. Widdecke*, 19 C.M.A. 576, 579, 42 C.M.R. 178, 181, 1970 WL 7035 (1970). Nor will "[p]roof of [unlawful influence] in the air" suffice. *See United States v. Allen*, 33 M.J. 209, 212 (C.M.A.1991). The appellant has simply not produced any evidence—beyond pure speculation[2]—of unlawful influence that would compel us to shift the burden to the Government to disprove that such occurred.

Finally, the appellant failed to raise this alleged "prosecutorial misconduct" and "unlawful command influence" at trial. Accordingly, he has waived the issue, *see* RULE FOR COURTS-MARTIAL 905(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). We reject this assignment of error as meritless.

### Denial of Motion to Suppress

The appellant next asserts that the military judge erred in failing to grant his Motion to Suppress evidence (an envelope) found in the appellant's uniform by Cpl Cervantes, USMC. We disagree.

Cpl Cervantes was serving as the Duty Noncommissioned Officer (NCO) on the night of 8–9 December 1997. The appellant was the Assistant Duty NCO. The wife of another Marine, LCpl Woods, dropped off an envelope at the duty shack with Cpl Cervantes containing $10.00 in "chow money" for her husband, who was also in the duty section. Cpl Cervantes pinned the envelope on the duty hut's bulletin board. Record at 99–100. Cpl Cervantes was later relieved of the duty by the appellant.

The following day, Cpl Cervantes was approached by LCpl Woods, who inquired concerning the whereabouts of the envelope his wife had dropped off for him. Cpl Cervantes went to the duty hut bulletin board and saw that the envelope he had pinned there was now gone. He searched the trash can in the duty hut to see if it had inadvertently fallen from the wall. He then tendered $10.00 of his personal funds to LCpl Woods, and went to see the appellant in his barracks room in order to determine if he had perhaps taken the envelope to give to LCpl Woods. Cpl Cervantes testified that, at this time, he did not suspect the appellant of having stolen the money, and that he was acting in his private (vice duty) capacity in going to the appellant's room. Record at 101–02. His primary motive was to be reimbursed for the money he had given LCpl Woods. The appellant was gone, but his roommate invited Cpl Cervantes into the room. Cpl Cervantes told the roommate he was looking for an envelope LCpl Woods's wife had left, and asked if he could look in appellant's "cammies" to see if perhaps it was there. The roommate agreed. Cpl Cervantes found the envelope—torn open—in the appellant's cammies. The money was missing. Record at 102.

We review the military judge's decision on a suppression motion for an abuse of discretion, applying a clearly erroneous standard to his essential findings of fact, and we conduct a *de novo* review of his conclusions of law. *United States v. Moses*, 45 M.J. 132, 135 (1996); *Ayala*, 43 M.J. at 298. We adopt the military judge's findings of fact and conclusions of law as contained in Appellate Exhibit XXXIX, as they are amply supported by the record and are not clearly erroneous. We agree completely with the military judge's conclusion that a Fourth Amendment violation did not occur where (1) Cpl Cervantes was not acting in an official or investigative capacity when he went looking for the envelope (and therefore he was not on a "quest for evidence" of a crime), and where, (2) Cpl Cervantes did not suspect that a theft had been committed at the time he searched through the appellant's "cammies."

2. We find the defense counsel's theory, structured around a completely cryptic telephone note, totally unpersuasive. *See* Appellant's Clemency Petition of 26 June 1998 at ¶ 2.

*See United States v. Jacobsen,* 466 U.S. 109, 115, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)(holding that a private invasion, whether accidental or deliberate, reasonable or unreasonable, does not violate the Fourth Amendment because of its private character); *United States v. Reister,* 44 M.J. 409, 415–16 (1996)(holding that the Fourth Amendment and the exclusionary rules are not implicated by a private search); *United States v. Portt,* 21 M.J. 333, 334 (C.M.A.1986)(holding that search by military policeman acting in non-law enforcement role is not covered by the Fourth Amendment). This assignment of error is without merit.

### Speedy Trial

In a summary assignment of error, the appellant next asserts that he was deprived of his right to a speedy trial under Article 10, UCMJ. At trial, the appellant unsuccessfully litigated his motion on this speedy trial issue. As discussed above, the appellant also litigated an evidentiary suppression motion that was similarly denied. The appellant thereafter entered mixed pleas, which included a lone conditional plea of guilty to a single specification (Charge III, Specification 2, alleging larceny of $10.00). This single plea of guilty to larceny was made conditional pursuant to R.C.M. 910 when the defense counsel, upon entering pleas, stated, "but for the military judge's overruling of the motion to suppress he would have pled not guilty [to Specification 2 under Charge III]." Record at 125–127. However, the appellant placed no conditions on any of his other pleas of guilty.

■ An unconditional guilty plea that ultimately results in a guilty finding waives any speedy trial issue as to that offense. *See* R.C.M. 707(e), 801(g), 905(e), 910(a)(2); *United States v. Birge,* 52 M.J. 209 (1999)(suggesting that an appellant may waive an Article 10, UCMJ, speedy trial issue through a valid guilty plea); *United States v. Kossman,* 38 M.J. 258, 262 (C.M.A.1993)(holding that "like most rights, speedy trial can be waived.")(quoting *United States v. King,* 30 M.J. 59, 66 (C.M.A.1990)); *United States v. Pruitt,* 41 M.J. 736, 738–39 (N.M.Ct.Crim. App.1994); *United States v. Britton,* 26 M.J. 24, 26–27 (C.M.A.1988). The sharp contrast between appellant's conditional plea to Specification 2 under Charge III due to the military judge's ruling on his suppression motion, and the unconditional pleas entered on all other Charges and Specifications, highlights the fact that counsel was aware of waiver resulting from *not* making a plea conditional.

We will apply waiver in unconditional guilty plea cases whether the alleged speedy trial violation involves the Sixth Amendment, R.C.M. 707, or Article 10, UCMJ, for we see no reason for differentiating between the three for purposes of applying the waiver rule. *See Birge,* 52 M.J. at 211; United States v. Sloan, 22 C.M.A. 587, 48 C.M.R. 211, 1974 WL 13798 (1974)(holding that failure to raise a speedy trial issue constituted waiver under Article 10, UCMJ, absent a timely challenge on the part of the appellant to any pretrial delay); *United States v. Hounshell,* 7 C.M.A. 3, 21 C.M.R. 129, 132, 1956 WL 4557 (1956)("The right to a speedy trial is a personal right which can be waived" by failing to raise the issue at trial). In those rare cases where we might find a speedy trial violation so severe as to constitute a due process violation, we have the power under Article 66(c), UCMJ, to do justice despite a previous waiver of the issue at trial. *See Britton,* 26 M.J. at 26–27.

We find no violation of the appellant's right to a speedy trial under Article 10, UCMJ, in regard to those offenses to which the appellant pled "not guilty." Having carefully examined the handling of this case from beginning to end, we are fully satisfied that the military judge was correct in finding that the Government acted with "reasonable diligence" throughout this prosecution in regard to all offenses alleged. Appellate Exhibit XXXVIII; *see Kossman,* 38 M.J. at 262; *United States v. Tibbs,* 15 C.M.A. 350, 353, 35 C.M.R. 322, 325, 1965 WL 4672 (1965). Accordingly, even if we were to assume, *arguendo,* that the speedy trial issue was not waived as regards the appellant's unconditional guilty pleas, we would not find an Article 10, UCMJ, violation in this case. Waived or not, the assigned error is without merit.

### Sufficiency of Evidence

Finally, the appellant contends there was insufficient evidence to support his conviction

upon two specifications alleging failures to obey lawful written orders in violation of Article 92, UCMJ. Specifically, the appellant challenges the sufficiency of the evidence in regard to his "actual knowledge" of the two written orders prohibiting his possession of a BB-gun (Charge II, Specification 1), and discharging a firearm within 150 yards of an occupied building (Charge II, Specification 2). The appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of this court are themselves convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

As to the specification alleging wrongful possession of a BB-gun in the appellant's barracks room contrary to base regulation, Prosecution Exhibit 3 (the Combined Bachelor Quarters Regulations for Naval Air Station, Patuxent River) provides at page 9, paragraph 45, that "Residents may not keep weapons or explosives in their rooms. Weapons include, but are not limited to the following: all firearms, pellet/BB-guns...." We find more than sufficient direct and circumstantial evidence establishing that the appellant had actual knowledge of that regulation. The testimony of Cpl Cervantes established the presence of the regulation in the duty binder, which it was appellant's obligation to read before going on duty. Prosecution Exhibit 4, the duty log book, bore appellant's signature signifying he had read it. Record at 144–150. The testimony of SGT Neville, LCpl Davis, and LCpl Mager further established that a Marine in appellant's position would have knowledge of the regulation. The appellant's possession of a BB-gun in his barracks room was proven beyond reasonable doubt by the testimony of LCpl Moneymaker, who saw the appellant fire the BB-gun from his barracks room; LCpl Davis, who saw the appellant holding a BB-gun in the appellant's room; and LCpl Mager, the appellant's roommate who saw BB-guns in the room "for a good month and a half." Record at 182. The appellant's actions of repeatedly secreting these weapons within the confines of his barracks room so as to avoid them being detected provided powerful circumstantial evidence of his knowledge of the wrongfulness of his possession of these BB-guns.

As to the specification alleging that the appellant wrongfully discharged his BB-gun within 150 yards of an occupied building, Prosecution Exhibit 1 (the base regulation on firearms) provides in paragraph 3(b)(3) that "no weapon will be discharged within 150 yards of an occupied building." The definition of "weapon" in that instruction includes BB-guns. The testimony of Cpl Cervantes, as supported by the testimony of Sgt Neville, LCpl Davis, and LCpl Mager, convince us that appellant had actual knowledge of this regulation when he violated it. The testimony of LCpl Moneymaker, who came under fire from the appellant (who was shooting from the window of his barracks room), clearly establishes that appellant discharged his BB-gun within 150 yards of an occupied building.

We find the evidence as a whole to be more than legally and factually sufficient to support the findings of guilty of Specifications 1 and 2 of Charge II. We are ourselves convinced beyond a reasonable doubt as to the appellant's guilt of these offenses. We reject the appellant's fourth assignment of error.

### Conclusion

Accordingly, we affirm the findings and sentence as approved by the convening authority.

Senior Judge DORMAN and Senior Judge TROIDL concur.