**Manfred HEARD, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 25102.**

United States Court of Appeals Fifth Circuit.

July 29, 1969.

Rehearing Denied Aug. 20, 1969.

Daniel S. Pearson, Miami, Fla., for appellant.

William A. Meadows, Jr., U. S. Atty., Alfred E. Sapp, Donald I. Bierman, Asst. U. S. Attys., Miami, Fla., for appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The defendant below appeals from a conviction and consequent sentence for violation of Title 21, U.S.C., § 174, the Harrison antinarcotics act, in that he facilitated the sale of a quantity of illegally imported heroin. The case was tried by the court without a jury. The sentence imposed was the minimum under the statute, five years. The facts

in the case are not seriously disputed, although there is controversy as to the conclusions to be drawn from them. The only issues raised by Heard on appeal are (1) whether the admitted sale was complete before his admitted activities took place, and (2) whether the activities of the government informer were of the nature proscribed by us in Williamson v. United States, 5 Cir. 1962, 311 F.2d 441. We find no merit in either contention and affirm.

The transaction that forms the background of the criminal charge here is the sale of drugs by Walker (a co-defendant who was not tried with appellant because he was still at large) to Gantt, an informant of the Bureau of Narcotics in Miami. The Bureau had supplied Gantt with $50 after having carefully searched him and having ascertained that he was not in the possession of any money or narcotics. A transmitting device was placed in Gantt's pocket so that narcotics agents could overhear his conversations. Narcotics agents then transported Gantt to the residence of Walker and saw him enter.

Gantt engaged in conversation with Walker, and gave Walker the $50 with which he had previously been supplied, and Walker handed five capsules of heroin to Gantt. Walker protested Gantt's leaving the premises with the heroin in his possession, insisting that Gantt take ("shoot") the drug in Walker's home. The necessary equipment ("works") was not available there, however, and at this point appellant, who was present, volunteered that he had the equipment at his house. The three men then proceeded to Heard's house, where Walker gave the capsules to Heard. He gave Gantt the necessary equipment and the five capsules, and Gantt injected himself with three of them.

In response to Heard's motion for a bill of particulars, the government specified that the sale of the drugs took place at Walker's residence, and that the facilitation of the sale, which consisted of appellant's providing the requisite equipment, took place at appellant's residence.

The first question raised is whether, as contended by the appellant, the sale had been completed and the transaction was over with the initial transfer of money and capsules. Heard argues that his activity subsequent to that event cannot be categorized as a facilitation of a sale, on the basis that the sale had already taken place.

Although there is logic in this contention, a more thoughtful and complete evaluation of the testimony regarding the entire transaction shows clearly that the sale in question was not only facilitated by Heard but in fact would almost certainly not have been completed without his active participation. Gantt testified that after he went to Walker's house and asked for drugs he told Walker that he wanted $50 worth. He then testified that Walker "gave it to me and told me I would have to do it there". He also testified that Walker wanted him to take the drug there because Walker was afraid, and did not "want to get busted". Appellant, who was present but apparently only as an onlooker up to this point, then volunteered that he had some "works" but did not have them with him. Gantt then agreed to go to appellant's house to take the drugs. Walker asked that the drugs be given back to him, and Gantt returned the capsules to him although Walker retained the money. The men then went to Heard's house, where Walker gave the drugs to Heard and told him to see that Gantt took the drugs there. Gantt and appellant then went into appellant's home, where Gantt was supplied with a syringe and needle and the drugs were returned to him.

A review of the testimony makes it obvious that the transaction had not been completed prior to the activity that occurred at Heard's residence. Although it is true that Walker had handed over the capsules and had received the money prior to insisting that the drugs be taken or consumed rather than be carried off, Gantt's willing acquiesence to

this proposal and his return of the capsules to Walker while permitting Walker to retain the money, all show that the type of sale contemplated envisioned immediate consumption of the drugs and not simply the handing over of an article in return for a sum of money. It seems clear, as was found by the trial judge, that the handing over of the drugs was conditioned upon their immediate, use, a condition to which Gantt's acquiescence is clearly shown by his returning the drugs to the seller when it became known that the necessary equipment for taking the drugs was not available. This being so, Heard's subsequent acts clearly "facilitated" the sale. See Bruno v. United States, 9 Cir. 1958, 259 F.2d 8, 10:

> "In Pon Wing Quong v. United States, 9 Cir., 111 F.2d 751, 756 in upholding the conviction of Quong we decided that the word 'facilitates' of 21 U.S.C.A. § 174 'in any manner facilitates a sale' has 'the common and ordinary definition as expressed by a standard dictionary. Quoting from Webster's Unabridged Dictionary, "facilitate" is defined as follows: "To make easy or less difficult; to free from difficulty or impediment; as to facilitate the execution of a task." ' This definition is accepted and followed in the Tenth Circuit in the United States v. One 1950 Chevrolet 4-Door Sedan, 215 F.2d 482, 484. Cf. Black's Law Dictionary 4 Ed. p. 705."

■■ Appellant's other contention is that his conviction cannot stand because it is based upon the "essentially uncorroborated testimony of a drug-addict informer" who was paid by the government depending upon results. He attempts to bring his case within the doctrine of Williamson v. United States, supra, where this Court held that without some justification or explanation as to an informer's having been instructed on the rules against entrapment and against inducing others to commit a

crime, it could not sanction "a contingent fee agreement to produce evidence against particular named defendants as to crimes not yet committed." (311 F.2d at 444). The instant case, however, does not contain facts presenting the opportunities for abuse that the Court found in Williamson.[1] Briefly summarized, appellant's attack upon the testimony of the informer Gantt is that Gantt at the time of the transaction was an addict, that he was a convicted felon awaiting trial on grand larceny charges, that he was sometimes paid for his services as an informer, that he was paid for results rather than information, and that he discussed with narcotics agents the fact that he would be expected to testify in this case. Although these facts may affect the credibility of the witness, they do not make his testimony insufficient to support the verdict. See, e.g. Burge v. United States, 9 Cir. 1965, 342 F.2d 408, 411, affirming a conviction for violating this statute, where the Court said:

> "The credibility of Hazel Geary and the weight to be accorded her testimony are matters within the exclusive province of the finder of the facts. While it is true that Hazel Geary admitted that she was a prostitute, a narcotics addict, had been convicted of a felony to wit: grand theft, was a government informer on appellant and was under a pending indictment for the offense of passing travelers' checks knowing the same to have been forged, and on which charge she had not been tried at the time of appellant's trial in September of 1962, nevertheless, it is apparent from the verdict of the jury that it believed her testimony rather than the testimony of the appellant who denied all knowledge of or connection with the narcotics transaction of which he was accused."

So, here, the credibility of Gantt and the weight of his evidence were for the

---

1. Compare United States v. Durham and Patterson, 5 Cir. 1969, 413 F.2d 1003; Henley v. United States, 5 Cir. 1969, 406 F.2d 705; Bullock v. United States, 5 Cir. 1967, 383 F.2d 545; Hill v. United States, 5 Cir. 1964, 328 F.2d 988.

finder of the facts. Also, it should be pointed out that Gantt's testimony was not lacking in corroboration, in that narcotic agents testified to having searched Gantt before the transaction, to having heard appellant offer his equipment, to having seen appellant, Gantt and the seller go to Heard's house, and to having found two unused capsules on Gantt when he returned from appellant's house.

This case presents a further crucial factual difference from *Williamson,* supra. The informer in *Williamson* was under instructions to "get Big Boy" (Williamson). Here the informer set out to make a case against Walker, provided Walker would make a sale. The appellant Heard's participation by "facilitating the sale" was entirely unexpected and fortuitous. He was not the object of the informer's activities.

The judgment of the district court is *Affirmed.*