James McLAUGHLIN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–962.

Court of Appeals of Alaska.

June 5, 1987.

Steve Cole, Asst. Public Defender, Kodiak, and Dana Fabe, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

James McLaughlin was convicted of interference with official proceedings, a class B felony. AS 11.56.510(a)(1)(D). The charge arose from McLaughlin's attempt to affect the outcome of a pending criminal charge by threatening a police officer. McLaughlin appeals, contending that the police officer's conduct amounted to entrapment and violated his sixth amendment right to an attorney and his fifth amendment right to remain silent. We affirm.

On September 24, 1984, McLaughlin had a pending criminal case charging him with cocaine possession. He called the Kodiak police station and spoke with Sergeant Floyd Steele. McLaughlin told Steele that he knew Steele's son was selling drugs. After the call, Steele contacted Investigator Charles Lowry and told him that he

believed that he had received a threatening call from McLaughlin.

McLaughlin called Steele again that day. McLaughlin again made allegations about Steele's son selling drugs. Steele told McLaughlin that he felt that McLaughlin was threatening him, but McLaughlin denied it. Later, McLaughlin made a third phone call to the Kodiak police station. He asked to speak to Steele, but was told that Steele had left work for the night. McLaughlin left a message with the dispatcher to tell Steele that there would be trouble concerning Steele's son, that they would all be in court, and that everyone would hear about it.

The dispatcher called Steele at home and gave him the message. Steele again contacted Investigator Lowry and informed him of the phone call. The two men met and went to the police station where Steele telephoned McLaughlin. Steele later testified that he believed that McLaughlin was trying to influence him and that he had a hunch that McLaughlin would bring up his pending drug charge. Steele knew that McLaughlin was represented by an attorney on the drug charge, but did not contact the attorney.

During the phone call, initiated by Steele, McLaughlin raised the subject of his pending drug case. McLaughlin also made more claims about Steele's son dealing drugs. During this conversation, the following exchange took place between McLaughlin (M) and Steele (S):

M. Yeah well, so lets a, lets talk business.

S. Well, what do you want to trade?

M. Well, what do you want to do?

S. I don't know. I'm, I'm asking you.

M. Well, how about dropping my charges?

S. Dropping yours? ＿＿＿

M. My charges are bullshit.

S. OK ........ OK, in turn for what?

M. Return for forget [sic] about everything else....

S. OK I gotta meet you and talk this over somehow. I ain't gonna be talking on one of these phones.

The two men agreed to meet later at McLaughlin's home to discuss the situation. McLaughlin told Steele to call before he came by.

After this call, Steele and Investigator Lowry consulted the district attorney's office and drew up a complaint for attempted interference with official proceedings. Steele and Lowry obtained an arrest warrant and a warrant authorizing the electronic monitoring and recording of subsequent conversations with McLaughlin. Lowry and Steele returned to the police station. Steele called McLaughlin's residence several times, but McLaughlin was not there. Steele decided to go look for McLaughlin; he found him about ten minutes later. McLaughlin agreed to meet Steele at McLaughlin's residence a short time later.

Steele went to McLaughlin's apartment where the two men talked. McLaughlin wanted Steele to influence either judges, the district attorney, or other police officers to not pursue McLaughlin's drug case. In exchange, McLaughlin would not bring anyone forward who would testify that Steele and his son were distributing illegal drugs. McLaughlin alternatively suggested having his charge reduced to a misdemeanor. The conversation ended when officers entered the apartment and arrested McLaughlin.

McLaughlin was charged with interference with official proceedings. AS 11.56.-510(a)(1)(D). He moved to suppress evidence and to dismiss the indictment on the ground that his fifth and sixth amendment rights were violated. Alternatively, he argued that Steele's actions constituted entrapment. The trial court denied both of McLaughlin's motions. A jury found McLaughlin guilty of the offense.

McLaughlin appeals the trial court's finding that the police officer's conduct did not amount to entrapment. McLaughlin contends that the phone calls made by Steele to McLaughlin's home, as well as Steele's physical attempts to locate him, amounted to improper action constituting entrapment.

Entrapment is an affirmative defense. Alaska Statute 11.81.450 states:

> In any prosecution for an offense, it is an affirmative defense that, in order to obtain evidence of the commission of an offense, a public law enforcement official or a person working in cooperation with the official induced the defendant to commit the offense by persuasion or inducement as would be effective to persuade an average person, other than one who is ready and willing, to commit the offense. Inducement or persuasion which would induce only a person engaged in an habitual course of unlawful conduct for gain or profit does not constitute entrapment.

The defendant has the burden of establishing the defense by a preponderance of the evidence. AS 11.81.900(b)(1)(B). Entrapment is an issue for the court, not the jury. *Yates v. State,* 681 P.2d 1362, 1363 (Alaska App.1984). A trial court's findings will be upheld unless they are "clearly erroneous." *Blakesley v. State,* 715 P.2d 269, 271 (Alaska App.1986). Alaska has adopted the "objective" test for determining whether entrapment has occurred. *Grossman v. State,* 457 P.2d 226, 229 (Alaska 1969). The objective test requires the court to focus upon the conduct of the police. "The question is ... whether that conduct falls below an acceptable standard for the fair and honorable administration of justice." *Pascu v. State,* 577 P.2d 1064, 1067 (Alaska 1978).

In this case, McLaughlin initiated the contact with Sergeant Steele. The record supports the conclusion that Steele contacted McLaughlin only after Steele reasonably believed that McLaughlin was threatening him. Steele neither pressured McLaughlin, nor took advantage of friendship or of any weaknesses of McLaughlin. *Cf. Pascu,* 577 P.2d at 1067–68 (entrapment found where police informant made numerous pleas, based on long-term friendship and obligation, and exploited suspect's heroin addiction). Based upon our review of the record, we conclude that the trial court was not clearly erroneous in finding that McLaughlin failed to show that Sergeant Steele's actions constituted entrapment.

McLaughlin also appeals the trial court's denial of his motion to suppress and motion to dismiss based upon a violation of his right to an attorney under the Sixth Amendment to the United States Constitution and article I, section II of the Alaska Constitution. McLaughlin bases his claim on the fact that Officer Steele knew that McLaughlin had an attorney representing him on his pending charge, yet Steele initiated a phone call while having a "hunch" that McLaughlin would discuss his pending case.

The state argues that Officer Steele was investigating a *new* crime, in which McLaughlin's right to counsel had not yet attached. Therefore, the state contends, McLaughlin's statements should be admissible at a trial on the new charge.

Federal law supports the state's position. In *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), Moulton and his co-defendant Colson had entered not guilty pleas to theft charges. Colson told the police that Moulton had suggested to him a plan to kill one of the state's witnesses in the theft case. 106 S.Ct. at 480. The state placed a recording device on Colson's phone, and had him wear a body wire to a meeting he had with Moulton where they discussed their case. 106 S.Ct. at 481. The Supreme Court held that the state had violated Moulton's sixth amendment rights as to the *pending* charges and that any statements which Moulton made concerning those charges must be suppressed. 106 S.Ct. at 488–90. The Court stated, however, that "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right had not yet attached, are, of course, admissible at a trial of those offenses." 106 S.Ct. at 490 n. 16. The dissent in *Moulton* found that there was no sixth amendment violation because, in monitoring Colson's contact with Moulton, the police were investigating new and independent charges. The dissent would therefore not have suppressed any statements, including statements which Moulton made concerning the pending theft charges. 106 S.Ct. at 492.

The Alaska courts have not previously decided this issue. Most state courts which have addressed the issue agree with the federal rule. *See, e.g., State v. Sparklin,* 296 Or. 85, 672 P.2d 1182, 1187–90 (1983); *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659, 668–69 (1980). However, McLaughlin cites a New York case which he claims has rejected the reasoning of the federal cases.

In *People v. Rogers,* 48 N.Y.2d 167, 422 N.Y.S.2d 18, 397 N.E.2d 709 (1979), Rogers was being held in custody as a robbery suspect and his attorney asked the police not to question him. The police ceased questioning Rogers about the robbery, but questioned him for several hours "about unrelated activities in which he had not participated." 422 N.Y.S.2d at 20, 397 N.E.2d at 711. Rogers made an admission concerning the robbery charges. The New York court held that Rogers' right to an attorney had been violated and ordered the admission suppressed. The court stated:

> [O]nce an attorney has entered the proceeding, thereby signifying that the police should cease questioning[,] a defendant in custody may not be further interrogated in the absence of counsel. We may not blithely override the importance of the attorney's entry by permitting interrogation of an accused with respect to matters which some may perceive to be unrelated.

422 N.Y.S.2d at 19, 397 N.E.2d at 710–11. The court explicitly based the decision on state constitutional grounds. 422 N.Y.S.2d at 20–21, 397 N.E.2d at 712.

The language of *Rogers* is very broad and appears to support McLaughlin's position. However, it is noteworthy that *Rogers* was decided well before *Moulton.* Furthermore, the evidence which the state sought to admit in *Rogers* was Rogers' inculpatory statement concerning the robbery for which he was under arrest, in custody, and had an attorney. Unlike the instant case there is no indication that Rogers initiated contact with the police in an attempt to commit a new crime. Rather, in *Rogers,* the police continued questioning Rogers for four hours after his attorney had asked the police to cease their questioning. We therefore find that the facts in the instant case are readily distinguishable from *Rogers.*

Where a suspect embarks on a new criminal venture, distinct from the one for which criminal charges are pending, and for which the defendant has not been interrogated or taken into custody, no sixth amendment rights have yet attached with regard to the new crime. Thus, no constitutional violation occurs where the police obtain information about the new crime from the suspect without contacting the attorney who is representing the suspect on the previous charges. Where a suspect initiates police contact under circumstances where the police reasonably believe that this contact constitutes an attempt to commit a new crime, we are persuaded to follow the federal authorities. We hold that the trial court did not err in admitting evidence which pertained to the interference with official proceedings charge.[1]

The conviction is AFFIRMED.

---

1. McLaughlin also argues that the police conduct in this case violated his right against self-incrimination under the Fifth Amendment to the United States Constitution and article 1, section 9, of the Alaska Constitution. We find this claim to be without merit. McLaughlin does not assert that his statements were not voluntary, that he was in custody, or that he was threatened or offered any improper inducement to talk to the police. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although it is possible that the police could have elicited statements from McLaughlin concerning his cocaine charge, it was McLaughlin who initiated the contact with the police. They simply followed up the contact in order to investigate the interference with official proceedings charge. Any statements which McLaughlin might have made concerning the cocaine possession charges would be inadmissible under *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). These factors appear to protect defendants from problematical police contacts such as those which

concerned us in *Balthazor v. State,* 653 P.2d 662,     664 (Alaska App.1982).