Brent S. JACOBS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5882.

Court of Appeals of Alaska.

Feb. 20, 1998.

Bethany P. Spalding, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER, J., and RABINOWITZ, Senior Supreme Court Justice.*

* Sitting by assignment made pursuant to article IV, section 11 of the Alaska Constitution and Administrative Rule 23(a).

## OPINION

COATS, Chief Judge.

Brent S. Jacobs pleaded no contest to one count of third-degree misconduct involving a controlled substance, AS 11.71.030(a)(1) (possession of cocaine with intent to deliver), and two counts of fourth-degree misconduct involving a controlled substance, AS 11.71.040(a)(2) and AS 11.71.040(a)(3)(A) (possession of one ounce or more of marijuana with intent to deliver, and possession of cocaine). Jacobs reserved the right to appeal the trial court's denial of his motion to suppress evidence. *See Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

Superior Court Judge Michael I. Jeffery sentenced Jacobs to a composite term of five and one-half years of imprisonment. Jacobs appeals, asserting that Judge Jeffery erred in denying his motion to suppress and that his sentence is excessive. We affirm.

On August 11, 1994, Investigator Loretta Lee of the North Slope Borough Department of Public Safety appeared before Magistrate Dan Cadra and applied for a search warrant for a residence located at 6565 Transit Street in Barrow. Lee testified that a confidential informant, referred to as "CRC-126," had called her the week before (on August 3, 1994) and had told her that on August 2, he (the informant) had given Albert Hopson a ride to the residence at 6565 Transit Street. According to the informant, Hopson went into the house and returned with a quarter pound of marijuana. Hopson told the informant that Brent Jacobs had sold him the marijuana, and that Jacobs had stated that there was more marijuana in the house.

Informant CRC-126 called Investigator Lee again on August 11, 1994, and told her that he had again taken Hopson to the residence at 6565 Transit Street. Hopson had again gone into the house and had returned with marijuana, which Hopson said he purchased from Jacobs.

When she applied for the search warrant, Lee told the magistrate that CRC-126 had provided very reliable information to the Department in the past. She also told Magistrate Cadra that informant CRC-126 first began to work for the North Slope Borough Department of Public Safety in exchange "for [favorable] consideration of drug charges that he had against him," but that CRC-126 was now working "on the reward system."

Lee explained to the magistrate that the Barrow police operated a "Reward for Information on Drugs" program, also known as the "RID" program, and that informant CRC-126 was participating in this program. Under RID, the amount of reward money an informant received depended on whether the informant's tip led to an actual seizure of drugs. If no drugs were seized, the informant received nothing. If the police seized drugs based on the informant's tip, then the informant could receive a reward of up to $3000.

Based on Lee's information, Magistrate Cadra issued a search warrant for the residence at 6565 Transit Street. The police searched the residence and seized twenty-one bindles of cocaine weighing a total of 20.55 grams, a plastic bag containing .95 grams of cocaine, thirteen baggies of marijuana, and drug paraphernalia. Subsequently, Jacobs and two co-defendants were indicted for various drug offenses.

Following his indictment, Jacobs moved to suppress the evidence obtained pursuant to the search warrant. He claimed that the North Slope Borough's RID program violated his due process rights because, under the program, the amount of an informant's reward was contingent on the success of the investigation.

Judge Jeffery held an evidentiary hearing on Jacobs' motion. Evidence presented at that hearing established that, under the RID program, informants received a reward of up to $3000 for information relating to the illegal sale and possession of drugs. The precise amount varied, depending on the level of help that the informant provided to the police. One measure of this level of help was the informant's willingness to testify for the government in any ensuing court proceedings. However, the informant in Jacobs' case, CRC-126, was paid his reward ($1,900) on August 18, 1994, shortly after the execution of the search warrant—some three months

before Jacobs was indicted (November 15, 1994).

Based on these findings, Judge Jeffery denied Jacobs' motion to suppress.

■ Jacobs appeals this ruling, renewing his argument that the use of a paid informant violates due process if the informant's reward is contingent on the outcome of the prosecution. Jacobs relies upon *State v. Glosson*, 462 So.2d 1082 (Fla.1985), a case decided by the Florida Supreme Court under the due process clause of the Florida Constitution.

In *Glosson*, a sheriff initiated a "reverse-sting" operation. The sheriff provided an informant with marijuana and instructed the informant to find buyers for the marijuana; the buyers would then be prosecuted. For his part in this operation, the informant would receive ten percent of the value of all property that was forfeited in civil forfeiture proceedings arising from the criminal investigations in which he participated and testified, so long as those investigations resulted in successful prosecutions. *Glosson*, 462 So.2d at 1083.

Working under this agreement, the informant proceeded to sell marijuana to various persons, then alerted the authorities to the sales. The informant's activities led to the arrest of Glosson and several co-defendants, and the seizure of large amounts of property (several vehicles and over $80,000 in cash). *Id.*

The Florida Supreme Court held that the sheriff's arrangement with the informant violated the defendants' right to due process of law under the Florida Constitution. In reaching this conclusion, the court relied heavily on the due process analysis adopted by the Fifth Circuit in *Williamson v. United States*, 311 F.2d 441 (5th Cir.1962).

In *Williamson*, an informant was hired by law enforcement officers to make purchases of bootleg whisky from certain named individuals. For each of the named individuals, the informant was promised a pre-determined sum of money if he could make a case against that person. 311 F.2d at 442. The government presented no evidence that the named individuals were known bootleggers

or that there was any other reason to suppose that they were violating the liquor laws. The Fifth Circuit held that the government's arrangement with the informant violated the federal due process clause. The court declared that, in the absence of any good reason for the government to target specified people, the court would not allow "a contingent fee agreement to produce evidence against particular named [individuals] as to crimes not yet committed." *Williamson*, 311 F.2d at 444. The court feared that such agreements would lead to entrapment and "frame-up[s]." *Id.*

The Florida Supreme Court in *Glosson* realized that their case was somewhat different from *Williamson*, since the sheriff had not instructed the informant to target specified individuals. Nevertheless, the Florida court concluded that the agreement in *Glosson* was fundamentally similar to the agreement in *Williamson* because it "seemed to manufacture, rather than detect, crime." *Glosson*, 462 So.2d at 1084. The Florida court cited cases from other states in which courts had overturned convictions when the police instigated crimes, then charged the participants. *Id.* at 1085. Based on these authorities, the Florida court concluded that

> the contingent fee agreement with the informant ... violated the respondents' due process right under our state constitution.... We can imagine few situations with more potential for abuse of a defendant's due process right. The informant here had an enormous financial incentive not only to make criminal cases, but also to color his testimony or even commit perjury in pursuit of the contingent fee. The due process rights of all citizens require us to forbid criminal prosecutions based upon the testimony of vital state witnesses who have what amounts to a financial stake in criminal convictions.

*Glosson*, 462 So.2d at 1085.

Jacobs asks us to interpret Alaska's due process clause in the same way that *Glosson* interpreted Florida's due process clause. We decline for four reasons.

First, the facts of Jacobs' case are fundamentally different from the facts of *Glosson*

and *Williamson.* In *Glosson* and in *Williamson,* the police hired informants to act as *agents provocateurs.* That is, the informants were instructed to approach people—people whom the police had no prior reason to suspect of criminal activity—and encourage these people to commit new crimes so that the police could prosecute them. In Jacobs' case, however, the informant came to the Barrow police with evidence of on-going criminal activity—sales of marijuana that were being conducted from the house on Transit Street. The informant, CRC–126, had not instigated these sales; in fact, the informant had apparently not even participated in them. Rather, his passenger Hopson had purchased the marijuana; CRC–126 found out about the sales because Hopson made no attempt to conceal his purchases.

As the court in *Williamson* explicitly recognized, there is a substantial difference between, on the one hand, paying an informant to instigate new criminal activity by people with no known disposition to commit crimes, and, on the other hand, paying an informant to investigate on-going criminal activity by people who have already shown a willingness to break the law. Jacobs' case presents the latter situation.

Our second reason for rejecting *Glosson* is that the decisions in *Glosson* and *Williamson* appear to have been prompted by perceived limitations in the subjective theory of entrapment. Under federal law, a person pleading the defense of entrapment must show that they had no prior disposition to commit the crime. *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Florida law likewise follows this subjective theory of entrapment. *See Munoz v. State,* 629 So.2d 90, 99 (Fla.1993); *Vazquez v. State,* 700 So.2d 5, 13 (Fla.App.1997); *State v. Dawson,* 681 So.2d 1206, 1208 (Fla.App.1996). For offenses such as bootlegging and purchase of marijuana,

this would generally be difficult to prove. Thus, if courts are to rein in unconscionable police tactics in such cases, they cannot rely on a theory of entrapment and must instead rely on notions of due process. *Munoz, supra; Vazquez, supra.*

 Alaska, on the other hand, has adopted the objective theory of entrapment. Under the objective theory, even if the defendant was willing to commit the crime, a court can still find entrapment if the police used dishonorable or unacceptable means of persuasion or inducement "[such] as would be effective to persuade an average person, other than one who is ready and willing, to commit the offense." AS 11.81.450; *Pascu v. State,* 577 P.2d 1064, 1067 (Alaska 1978); *McLaughlin v. State,* 737 P.2d 1361, 1363 (Alaska App.1987). If police conduct "falls below an acceptable standard for the fair and honorable administration of justice," *Pascu, supra,* this can be litigated in Alaska under the defense of entrapment. Alaska courts need not engage in new interpretations of the due process clause.

Our third reason for rejecting *Glosson* is that Florida appears to be the only jurisdiction to have held that due process forbids the use of witnesses who have a monetary interest contingent on the outcome of the case.[1] Moreover, even in Florida the *Glosson* decision has been narrowly interpreted. *See State v. Hunter,* 586 So.2d 319, 321 (Fla.1991) (limiting *Glosson* to cases in which an informant's reward is expressly conditioned upon the informant's testifying for the government and the government's obtaining a conviction).

Our fourth reason for rejecting *Glosson* is that the persuasiveness of the *Glosson* analysis has been undercut by subsequent judicial decisions. As explained above, the *Glosson* court relied on the Fifth Circuit's decision in *Williamson,* 311 F.2d 441. However, *Williamson* has been overruled by the Fifth Circuit, sitting *en banc. See United States v.*

---

1. In *United States v. Waterman,* 732 F.2d 1527 (8th Cir.1984), a three-judge panel of the Eighth Circuit Court of Appeals concluded that "due process cannot be interpreted to allow the government to reward its witnesses based upon the results of their testimony," and that "[s]uch an agreement is nothing more than an invitation to

perjury having no place in our constitutional system of justice." *Id.* at 1531, 1533. However, sitting *en banc,* an evenly divided Eighth Circuit vacated the panel's decision, thus letting stand the district court's denial of Waterman's due process claim. *Id.* at 1533.

*Cervantes–Pacheco,* 826 F.2d 310 (5th Cir. 1987) (*en banc* ), *cert. denied, Nelson v. United States,* 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). The *Cervantes–Pacheco* decision is discussed in more detail below.

Many courts have held that even though an informant is paid a contingent fee for information that results in successful investigations, there is no violation of due process so long as the fee is not contingent on the defendant's conviction. *See, e.g., Roark v. State,* 46 Ark.App. 49, 876 S.W.2d 596, 597 (1994) (due process not violated when the government's promise of lenient treatment for the informant is not contingent on the defendant's conviction); *Commonwealth v. Mehalic,* 382 Pa.Super. 264, 555 A.2d 173 (1989) (due process not violated when the government's agreement with the informant was not contingent on the defendant's conviction); *State v. Waff,* 373 N.W.2d 18 (S.D. 1985) (due process not violated when the government's agreement to reduce the charges against an informant in exchange for the informant's testimony was not contingent on the defendant's indictment or conviction).

As noted above, the informant in Jacobs' case received his reward money soon after the search of the Transit Street residence yielded drugs and other evidence of drug-dealing—long before Jacobs was indicted, much less convicted. Thus, the informant's relationship with the police would not be illegal under these cases.

Moreover, even when an informant's reward depends on the outcome of the prosecution, a majority of the courts that have considered this issue have concluded that there is no due process violation in receiving the informant's testimony at the defendant's trial, so long as the defendant is able to fully apprise the jury of the agreement and its potential bearing on the informant's testimony. A case which summarizes this majority view is *United States v. Grimes,* 438 F.2d 391 (6th Cir.1971). In that case, the Sixth Circuit Court of Appeals declared:

> No ... overriding policy [requires exclusion of the testimony of an informant who is paid a] contingent fee ... for the conviction of specified persons for crimes not yet committed. Although it is true that the informant working under this type of arrangement *may* be prone to lie and manufacture crimes, he is no more likely to commit these wrongs than witnesses acting for other, more common reasons.... Rather than adopting an exclusionary rule for a particular factual situation, irrespective of the mode of payment, we prefer the rule that would leave the entire matter to the jury to consider in weighing the credibility of the witness-informant. *Cf. Heard v. United States,* 414 F.2d 884 (5th Cir. 1969). In our view this approach provides adequate safeguards for the criminal defendant against possible abuses since the witness must undergo the rigors of cross-examination.

*Grimes,* 438 F.2d at 395–96 (footnote omitted) (emphasis in the original).

The First Circuit has also adopted this rationale, finding that due process is satisfied by (1) allowing the defense to elicit testimony regarding the agreement between the government and the witness, (2) permitting the defense to cross-examine the witness about the agreement, and (3) instructing the jury to weigh the witness' testimony with caution. *See United States v. Dailey,* 759 F.2d 192, 200 (1st Cir.1985).

As previously discussed, the Fifth Circuit overruled its *Williamson* decision in *United States v. Cervantes–Pacheco,* 826 F.2d 310 (5th Cir.1987) (*en banc* ), holding that the due process clause does not forbid the government from using contingent-fee informants to target particular suspects. The *Cervantes–Pacheco* court stated:

> No practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence. It is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence, but courts uniformly hold that such a witness may testify so long as the government's bargain with him is fully ventilated so that the jury can evaluate his credibility.... We therefore hold that an informant who is promised a contingent fee by the gov-

ernment is not disqualified from testifying in a federal criminal trial.

*Id.* at 315 (footnote omitted).

More generally, in *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the United States Supreme Court also expressed the view that a witness' motive to lie does not render his or her testimony inadmissible: "The petitioner is quite correct in the contention that [the informant], perhaps even more than most informers, may have had motives to lie. But it does not follow that his testimony was untrue, nor does it follow that his testimony was constitutionally inadmissible. The established safeguards of the Anglo–American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." *Id.* at 311, 87 S.Ct. at 418.

Other cases in accord with *Cervantes–Pacheco* include: *United States v. Valle–Ferrer,* 739 F.2d 545, 547 (11th Cir.1984) (holding that an informant's anticipated receipt of $1,000 if his testimony resulted in a conviction did not render him incompetent to testify); *United States v. Edwards,* 549 F.2d 362, 365 (5th Cir.1977) (allowing testimony of an informant whose receipt of a reward was made contingent upon the "final results" of his undercover work); *United States v. Jett,* 491 F.2d 1078, 1081 (1st Cir.1974) (stating that payment of an informant based on the value of services rendered is a permissible contingent arrangement); *Heard v. United States,* 414 F.2d 884, 886–87 (5th Cir.1969) (approving admission of the testimony of an informant who was a convicted felon and had been paid for results rather than information); *Williams v. State,* 463 So.2d 1064, 1069 (Miss.1985) (acknowledging some merit in the *Glosson* result, but nevertheless concluding that "we would be remiss in our duties were we to bar the testimony of contingency fee informants"); *State v. Salenas,* 112 N.M. 268, 814 P.2d 136 (N.M.App.1991) (holding that a contingency fee agreement with a confidential informant does not violate due

process). *See generally* Annotation, *Contingent Fee Informant Testimony in State Prosecutions,* 57 A.L.R.4th 643 (1987).

We find the reasoning of these courts persuasive.

Finally, we note that Jacobs' case is materially different from *Glosson* and all of the other cases cited above. All of those cases involve the issue of whether an informant who works for a contingent fee will be allowed to testify at trial. Jacobs' case, on the other hand, involves the issue of whether a police officer applying for a search warrant can rely on information obtained from such an informant.

█ A defendant has fewer due process rights at a search warrant proceeding than at trial. Most notably, the police apply for search warrants in *ex parte* proceedings, and they may rely on hearsay information from even presumptively untrustworthy informants (as long as the information is corroborated). The owner of the property has no right to cross-examine the police witnesses who testify at a search warrant application, nor to question the police about their informants. Indeed, if the target of the investigation has no interest in the property searched or seized, he or she generally has no standing to dispute the search at all. Jacobs cites no authority to support his proposed extension of *Glosson* to search warrant proceedings.

[5] The *Aguilar–Spinelli* [2] test—the test used in Alaska to test the sufficiency of search warrant applications based on hearsay [3]—recognizes the potential unreliability of police informants and is framed to take account of this fact. The *Aguilar–Spinelli* test "requires the issuing court to be given evidence enabling it to independently determine, first, that the informant's source of information is reliable, and, second, that the informant was truthful in communicating the information to the authorities." *Lewis v. State,* 862 P.2d 181, 185 (Alaska App.1993)

---

**2.** *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

**3.** *See State v. Jones,* 706 P.2d 317 (Alaska 1985).

(citing *State v. Jones,* 706 P.2d 317, 320–21 (Alaska 1985)).

In Jacobs' case, the magistrate was fully informed of the structure of the RID program and of informant CRC–126's interest in obtaining a monetary reward for his participation in this investigation. Investigator Lee informed the magistrate of the range of rewards offered, and she told the magistrate that CRC–126 was aware that his reward depended on the amount of drugs recovered.

Jacobs does not argue that the *Aguilar–Spinelli* test was not satisfied in this case. He also does not argue that the *Aguilar–Spinelli* test fails to adequately safeguard a person's right to be free from unreasonable searches and seizures. In effect, however, Jacobs is asking this court to adopt a rule that absolutely bans the police from relying on information provided by an informant who is or will be paid on a contingent fee basis. We are not persuaded by this position and we conclude that such a rule is unnecessary.

For all of these reasons, we reject Jacobs' attack on his conviction. We now turn to his sentence appeal.

■ Jacobs contends that his sentence is excessive. Jacobs' most serious offense was third-degree misconduct involving a controlled substance, a class B felony. Jacobs had previously been convicted of two felonies: possession of cocaine and possession of marijuana with intent to sell. Based on these prior convictions, Jacobs was a "second felony offender" for purposes of presumptive sentencing. (The superior court ruled that these two convictions merged for presumptive sentencing purposes. *See* AS 12.55.145(a)(1)(C).) As a second felony offender convicted of a class B felony, Jacobs faced a presumptive sentence of four years' imprisonment. AS 12.55.125(d)(1).

Jacobs' other offenses, fourth-degree misconduct involving a controlled substance, are class C felonies. The presumptive sentence for a second felony offender convicted of a class C felony is two years' imprisonment. AS 12.55.125(e)(1).

Judge Jeffery found three aggravating factors: that Jacobs' conduct "was designed to obtain substantial pecuniary gain and the risk of prosecution and punishment for the conduct [was] slight"; that Jacobs' "prior criminal history include[d] an adjudication as a delinquent for conduct that would have been a felony if committed by an adult"; and that Jacobs' "offense involved the delivery of a controlled substance under circumstances manifesting an intent to distribute the substance as part of a commercial enterprise." AS 12.55.155(c)(16), (19), and (23). Based on these aggravators, Judge Jeffery sentenced Jacobs to a composite term of five years and six months.

In imposing this sentence, Judge Jeffery pointed to evidence which demonstrated that Jacobs had engaged in the commercial sale of drugs. He found that Jacobs was involved in a fairly sophisticated retail operation selling marijuana and cocaine. The judge also found that Jacobs was deriving his main income and supporting himself through selling drugs.

Jacobs had an extensive prior record of drug offenses. He was adjudicated delinquent for possession of cocaine. Unable to successfully complete his probation, Jacobs was ultimately institutionalized at McLaughlin Youth Center. As an adult, Jacobs was convicted of possession of cocaine and possession of marijuana with intent to sell, along with a misdemeanor conviction for possession of LSD. Jacobs originally received a suspended imposition of sentence for these crimes, on condition that he serve ninety days in jail. However, his probation was revoked because he failed to report to his probation officer and because he failed to comply with the requirements of a drug monitoring program. As a result, the superior court did not set aside Jacobs' convictions at the end of the probation period. Based on this record, and on Jacobs' present offenses, Judge Jeffery concluded that Jacobs' prospects for rehabilitation were poor.

The sentence that Judge Jeffery imposed is one and one-half years longer than the four-year presumptive term that Jacobs faced for his most serious offense. However,

given the seriousness of Jacobs' offenses, his extensive prior record, and his poor prospects for rehabilitation, we conclude that this sentence is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The judgment of the superior court is AFFIRMED.