STATE of Alaska, Petitioner,

v.

**Jung Ho YI, Respondent.**

No. A–8430.

Court of Appeals of Alaska.

Feb. 20, 2004.

Kenneth J. Diemer, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Petitioner.

David Henderson, Law Offices of David Henderson, Bethel, for Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

It is a misdemeanor offense to purchase, sell, or barter bear parts.[1] Bethel, Alaska, is a "damp" community where it is legal to possess alcohol for one's personal use, but it is a felony offense to buy, sell, or trade alcohol.[2] The defendant in this case, Jung Ho Yi, traded two bottles of Crown Royal Whiskey for a bear gallbladder which was offered by undercover Alaska State Trooper Gary Pacolt. Approximately three weeks later, Yi engaged in another similar transaction with Trooper Pacolt. When the State charged Yi with these criminal offenses, Yi defended on the ground of entrapment. Yi contended that, although he knew that selling of gallbladders or whiskey was illegal, he reasonably believed, based in part on Trooper Pacolt's representations, that a trade (or exchange of gifts) was lawful. Superior Court Judge Dale O. Curda found that Yi established the defense of entrapment. The State petitioned for review and we granted the petition. We now reverse Judge Curda's ruling.

### Factual and procedural background

During January of 2002, Trooper Pacolt was assigned to spend three days in Bethel as part of an undercover operation to apprehend persons engaged in illegal buying and selling of bear gallbladders. The operation was set up in response to information, reported by the Alaska Department of Fish and Wildlife, that at least one restaurant in town had bought or bartered bear gallbladders in violation of the law. During this operation Trooper Pacolt attempted to sell or barter a bear gallbladder in at least six different restaurants in Bethel.

On January 18, Trooper Pacolt and Officer Betty Williams, from the Quinhagak Police Department, entered the Front Street Cafe dressed as civilians. This restaurant was the first that they selected. The two officers were the only patrons in the restaurant at the time. The two officers ordered dinner. Trooper Pacolt then noticed a man, later identified as Yi, who sat down to eat at a nearby table. Yi appeared to be an employee of the restaurant as he frequently went back into the kitchen.

Trooper Pacolt then engaged Yi in some small talk for about five or ten minutes. Most of the conversation revolved around the fact that both men were from Anchorage. At this point Trooper Pacolt removed a bear gallbladder from his shirt pocket and asked Yi if he was interested in buying. Yi responded that he did not want to buy it and that it was illegal. Trooper Pacolt said "no problem," and put the gallbladder back in his pocket. Trooper Pacolt then asked Yi if he knew where he could get some alcohol.

It is only at this point that Trooper Pacolt's and Yi's testimonies differ. According to Trooper Pacolt, Yi then asked to see the gallbladder again. And, after Pacolt handed it to him, Yi asked Pacolt if he was interested in trading the gallbladder for some alcohol. Trooper Pacolt replied that a trade would "be fine." Trooper Pacolt testified that he never indicated to Yi that such a trade was legal. According to Yi, after Pacolt asked where to get alcohol, he only told Pacolt that he had some for his own personal use. Yi testified that Trooper Pacolt first brought up the idea of trading alcohol for the gallbladder. Yi admitted to readily agreeing to this transaction, which he characterized as a gift

---

1. 5 Alaska Administrative Code (AAC) 92.200(b)(2) ("A person may not purchase, sell, [or] barter ... any part of a bear, except an article of handicraft made from the fur of a black bear, an unsealed marten ... or an unsealed beaver, land otter, lynx, wolf, or wolverine.").

2. *See* AS 16.05.920(a); AS 16.05.925(a); 5 AAC 92.200(b)(2).

exchange. Yi also testified that he got the impression from Trooper Pacolt that such an exchange would be legal. Yi does not claim that he knew Trooper Pacolt was a police officer at that time. Officer Williams also testified but her testimony was not helpful in clearing up these conflicting accounts.

From this point on, the facts are uncontested. Yi had an employee of the cafe bring Trooper Pacolt a paper bag containing two bottles of Crown Royal whiskey. Yi then proceeded to staple the bag shut. Yi also said that he would pay for Trooper Pacolt's dinner as part of the deal.

Before Trooper Pacolt left the cafe, he told Yi that he might have more gallbladders in the future and asked if Yi might be interested. Yi said no, but stated that he might know some people who would be.

On February 12, Trooper Pacolt returned to the Front Street Cafe alone, this time wearing a tape-recording device. Trooper Pacolt had applied for and received a *Glass*[3] warrant in order to record his conversation with Yi. Trooper Pacolt had another bear gallbladder with him at this time. Pacolt sat down to have dinner. Yi came out, talked with him, and took his order. Trooper Pacolt then told Yi that he had another gallbladder and showed it to him. He then asked Yi if he was interested in trading again "like last time." Yi indicated that he was interested, this time trading three bottles of vodka for the gallbladder. Yi again paid for Trooper Pacolt's dinner.

The State indicted Yi on two felony counts of sale of liquor without a license[4] and charged him by information with two misdemeanor counts for purchasing parts of a big game animal.[5]

Yi filed a motion to dismiss the indictment on the ground that he had been entrapped by the police. In an evidentiary hearing on the motion conducted by Judge Curda, Yi, Trooper Pacolt, and Officer Williams testified. Following the hearing, Judge Curda ruled that Yi had established the defense of entrapment.

Judge Curda specifically did not resolve the conflict in the testimony about whether it was Trooper Pacolt or Yi who initiated the plan to trade the bear gallbladder for alcohol. He concluded that it was unnecessary to resolve this factual conflict. Rather, Judge Curda concluded that, "from an objective point of view, a reasonable person would not have believed the trade of alcohol for bear gallbladders was illegal." He pointed out that Yi initially refused to purchase the gallbladder. Judge Curda noted that Trooper Pacolt was the person who originally brought up the subject of obtaining alcohol. He concluded that Yi was not a bootlegger and that, if Trooper Pacolt had asked to purchase the alcohol, Yi would have refused. Judge Curda concluded that Yi only committed the offense because Yi believed that the transaction was legal: "[W]hile Yi acknowledges [that] he was aware [that] selling or buying either alcohol or the bear gallbladder would be illegal, he believed [that] an even trade would not be illegal. The court finds reasonable people in the State of Alaska, and specifically in Bethel, would agree." Judge Curda concluded that, because of Trooper Pacolt's persistence in pursuing Yi, and because of Yi's confusion over the legality of making a trade, Trooper Pacolt's conduct fell "below an acceptable standard for the fair and honorable administration of justice."

### The law of entrapment

Alaska's entrapment statute is codified at AS 11.81.450:

> In any prosecution for an offense, it is an affirmative defense that, in order to obtain evidence of the commission of an offense, a public law enforcement official or a person working in cooperation with the official induced the defendant to commit the offense by persuasion or inducement as would be effective to persuade an average person, other than one who is ready and willing, to commit the offense. Inducement or persuasion which would induce only a person engaged in an habitual

---

3. *State v. Glass,* 583 P.2d 872 (Alaska 1978).

4. AS 04.11.010(a).

5. 5 AAC 92.200(b)(2).

course of unlawful conduct for gain or profit does not constitute entrapment.

▬ Entrapment is a defense to criminal charges, and the purpose of the defense is to deter law enforcement activities that go beyond the bounds of sound public policy.[6] Because AS 11.81.450 defines entrapment as an affirmative defense, a defendant bears the burden of establishing it by a preponderance of the evidence.[7] Entrapment is an issue for the court to decide rather than the jury.[8] Alaska employs an objective test for entrapment.[9] This means that "the court considers the nature of the police activity involved, without reference to the predisposition of the defendant."[10]

▬ We have previously stated:

In order to prevail on [an entrapment] defense, [the defendant is] required to prove that the police employed fundamentally unfair or dishonorable practices calculated to induce someone to commit the crime in question so that he might be arrested and prosecuted for the offense.... And while [the defendant does] not need to negate a predisposition to engage in similar conduct, [the defendant must show] that the dishonorable police practices were a substantial factor in inducing him to commit the charged offenses—that his commission of the offenses was "the direct result of inducement by law enforcement officials."[11]

▬ We conclude that Judge Curda erred in concluding that Yi established the defense of entrapment. In his findings, Judge Curda was equivocal in condemning the police conduct. At one point, he stated that he did not believe that Trooper Pacolt's actions were egregious or that it was the trooper's intent to entrap Yi into committing a crime. Looking objectively at Trooper Pacolt's conduct, the evidence does not show that the trooper engaged in fundamentally unfair or dishonor-

able practices which were calculated to induce someone to commit a crime, other than a person who was willing. Judge Curda did not resolve whether Trooper Pacolt or Yi first suggested a trade of the bear gallbladder for the alcohol. Even if Trooper Pacolt suggested the trade, this conduct, looked at objectively, does not constitute a fundamentally unfair or dishonorable practice calculated to induce an innocent person to commit a crime. Even if Trooper Pacolt had suggested the exchange and even if he had suggested that it would be lawful to trade the alcohol for the bear gallbladder, it would be unreasonable for Yi to rely on this representation. As Yi admitted, he had no suspicion that Trooper Pacolt was a police officer or was anyone other than an ordinary visitor to Bethel.

Judge Curda's finding that the trooper's actions were fundamentally unfair and that they induced Yi to commit the offenses appears to rest on his finding that reasonable people in the State of Alaska, and specifically in Bethel, would agree that trading the alcohol for the bear gallbladder would be legal, and therefore Yi was reasonable in concluding that his actions were legal. Other than Yi's statement that he thought that a trade would be legal, there is no support for this finding in the record. And, looked at objectively, this finding does not appear to be reasonable. Yi conceded that he knew that buying the gallbladder would be illegal. He also conceded that he knew that selling alcohol would be illegal. It does not seem reasonable to conclude that, by merely eliminating money from the transaction and trading alcohol for the bear gallbladder, the transaction would be legal. If this were the rule, a person could legally sell alcohol or sell a bear gallbladder by merely structuring the transaction as a trade. By engaging in two illegal

**6.** *Evans v. State*, 550 P.2d 830, 843–45, 845 n. 51 (Alaska 1976).

**7.** AS 11.81.900(b)(1); *Bachlet v. State*, 941 P.2d 200, 206 (Alaska App.1997).

**8.** *Folsom v. State*, 734 P.2d 1015, 1017 (Alaska App.1987).

**9.** *Grossman v. State*, 457 P.2d 226, 229 (Alaska 1969).

**10.** 21 Am.Jur.2d *Criminal Law* § 265 (1998).

**11.** *Washington v. State*, 755 P.2d 401, 405 (Alaska App.1988) (quoting *Anchorage v. Flanagan*, 649 P.2d 957, 961–62 (Alaska App.1982)).

acts, the parties could make the transaction legal.

Judge Curda's finding that Yi was reasonable in concluding that he could legally trade the alcohol for the bear gallbladder was fundamental to Judge Curda's ruling. Since we conclude that the finding is clearly erroneous (because it is not supported by the record), we conclude that Judge Curda's finding that Yi was entrapped was an abuse of discretion. We accordingly reverse Judge Curda's ruling that Yi established the defense of entrapment.

REVERSED.

MANNHEIMER, Judge, with whom STEWART, Judge, joins, concurring.

I agree that there was no entrapment here. I write separately to address one aspect of the superior court's decision.

On page 6 of its written decision, the superior court asserted that Yi was entrapped into committing the offense of bootlegging because, even though people know that the sale of alcohol is illegal in the dry and damp areas of this state, "reasonable people in the State of Alaska, and specifically in Bethel," would nevertheless mistakenly believe that it remained legal for them to trade alcohol for goods (as opposed to trading alcohol for money).

The superior court made no finding that the trooper misrepresented the legality of such a trade to Yi. Instead, the superior court appears to have adopted the position that any widespread community mistake concerning the law will support a claim of entrapment, even when law enforcement officials do nothing to encourage the defendant to adopt or rely upon this mistaken view of the law.

Alaska has adopted the objective theory of entrapment.[1] Under the objective theory of entrapment, the purpose of the defense is to identify instances in which "the police used dishonorable or unacceptable means" to induce someone to commit a crime, instances in which "police conduct falls below an acceptable standard for the fair and honorable administration of justice".[2]

Thus, under AS 11.81.450, entrapment is defined as *law enforcement conduct*—"persuasion or inducement" by law enforcement officers or those working in cooperation with them. Under the statute, police-instigated persuasion or inducement constitutes entrapment if it "would be effective to persuade an average person[, who was otherwise not] ready and willing, to commit the offense".

Here, the superior court appears to have found that Yi and many other members of the Bethel community were indeed "ready and willing" to barter alcohol for goods, with essentially no "persuasion or inducement" other than a simple request or suggestion, because they all shared the same mistaken belief that this conduct was legal. I have no idea whether the superior court's assertion is true. But even if it is, widespread misunderstanding of the law will not support a defense of entrapment, any more than an individual defendant's misunderstanding of the law will support a defense of entrapment, when law enforcement officers have done nothing to foster this misunderstanding or to persuade the defendant to rely upon this misunderstanding.

**1.** *Pascu v. State*, 577 P.2d 1064, 1067 (Alaska 1978); *Grossman v. State*, 457 P.2d 226, 229 (Alaska 1969); *Jacobs v. State*, 953 P.2d 527, 531 (Alaska App.1998). *See also* the legislative commentary to AS 11.81.450, found in 1978 Senate Journal, Supp. No. 47 (June 12), p. 138.

**2.** *Jacobs v. State*, 953 P.2d 527, 531 (Alaska App. 1998), quoting *Pascu. v. State*, 577 P.2d 1064, 1067 (Alaska 1978).