2002 ME 125

**STATE of Maine**

v.

**Thomas LEONARD.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 27, 2002.

Decided: Aug. 2, 2002.

R. Christopher Almy, DA, C. Daniel Wood, ADA, Bangor, for the State.

Donald F. Brown, Stillwater Professional Park, Bangor, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Thomas Leonard appeals from a judgment of conviction entered in the Superior Court (Penobscot County, *Mead, J.*) after a jury trial for assault (Class D), 17–A M.R.S.A. § 207 (1983 & Supp.2001), criminal threatening (Class D), 17–A M.R.S.A. § 209 (1983), three counts of criminal threatening with a dangerous weapon (Class C), 17–A M.R.S.A. §§ 209, 1252(4) (1983), and one count of reckless conduct with a dangerous weapon (Class C), 17–A M.R.S.A. §§ 211, 1254(4) (1983). Leonard argues that the Superior Court erred when it denied his motion to suppress evidence derived from (1) statements that he made after an alleged warrantless arrest, and (2) a search of his residence conducted before officers secured a search warrant. We affirm.

## I. CASE HISTORY

[¶ 2] Thomas Leonard's estranged wife had paid a contractor $15,000 to construct a garage at her home. Leonard, who lived apart from his wife, was apparently unhappy with the quality and progress of the work. On the evening of February 15, 2000, Leonard appeared at the contractor's home, threatened and beat the contractor and forced him to write Leonard a check for $15,000.

[¶ 3] The State Police were summoned and began looking for Leonard. He was eventually located at his separate residence in Glenburn. Several State Police Officers approached Leonard's residence and contacted him. Leonard refused to open his door. When asked if he had been to the contractor's residence that evening, Leonard responded that he had gone to get his money but, if anything, "I'm only guilty of assault and you can deal with my attorney on that." After this statement, Leonard asked the officers to leave his property.

[¶ 4] Leonard was then observed to have what some officers believed was a firearm. The officers retreated from the immediate area of Leonard's residence. A stand-off ensued and the State Police Tactical Team was called. There were several communications by the Tactical Team with Leonard, but negotiations failed. Eventually, tear gas canisters were fired into Leonard's residence. Leonard fired two shotgun blasts in the general direction of some of the police officers. At least one shot was fired in return by the police. Leonard exited his residence on two occasions and, on the second occasion, was arrested by the police. He was then transported to a hospital after complaining of chest pains.

[¶ 5] Immediately after Leonard was apprehended, his residence was searched by State Police Officers to determine if any other individuals were present and to examine the safety and security of the premises. During this search, a number of items were observed. Later, after a search warrant was obtained, the residence was again searched and a number of items were seized.

[¶ 6] After he was indicted,[1] Leonard filed a motion to suppress in which he

---

1. In addition to the charges on which he was convicted, Leonard was indicted on two counts of robbery, 17–A M.R.S.A. § 651(1)(B), (C) (1983 & Supp.2001) and one count of

asserted that (1) the statements that he made to the police during the stand-off and on his way to the hospital were obtained in the course of a custodial interrogation and in violation of the *Miranda*[2] standards, and (2) the items observed and seized in his residence were the product of a warrantless search unjustified by probable cause or exigent circumstances. The court denied the motion to suppress.

[¶ 7] Leonard proceeded to a jury trial at which he was convicted. After his sentencing to incarceration for 32 months at the Department of Corrections with all but 14 months suspended and 3 years probation, Leonard brought this appeal.[3]

[¶ 8] Leonard's appeal is primarily directed at the rulings by the court on his motions to suppress. He contends that the police were illegally at his residence on the night of February 15, 2000, and, therefore, the events that occurred subsequent to the illegal police presence may not be used against him. He also argues that, because he was surrounded and in a stand-off situation, he was, in effect, in custody. Because he was in custody and was not read his *Miranda* warnings, he argues that the statements he made during this period cannot be used against him. Finally, he argues that the warrantless search of his residence, immediately after he was apprehended, was without probable cause and exigent circumstances. Therefore, he argues, evidence obtained from observations in that search cannot be used, and evidence obtained in the subsequent search, with a warrant, was the fruit of a poisonous tree and cannot be used against him.

## II. DISCUSSION

▮ [¶ 9] The State Police reasonably believed that Leonard had recently committed a robbery by threatening and beating the garage contractor to force him to write and turnover to Leonard a check for $15,000. *See* 17–A M.R.S.A. § 651(1)(C), (D) (1983). Because the officers had probable cause to believe that Leonard had recently committed the Class A felony of robbery, 17–A M.R.S.A. § 651(2) (1983), the officers were legally on Leonard's property to question him regarding the reported robbery. With the information that the officers had, they also could have attempted to effect an arrest of Leonard at the time. *See State v. Foy*, 662 A.2d 238, 240 (Me.1995).

[¶ 10] Certainly, during the stand-off, Leonard was not free to leave. Just as certainly, he was not in the custody and control of the police. They were trying to take him into custody, but he was resisting. The statements that Leonard made and the actions that he took during the stand-off, prior to his seizure by the police, were not statements made during a custodial interrogation. *See State v. Swett*, 1998 ME 76, ¶ 4, 709 A.2d 729, 730. No *Miranda* warning was needed. *See id.*

[¶ 11] Separately, the record supports the suppression court's findings that Leonard was not subject to interrogation, but that the statements Leonard made while being transported to the hospital, after his arrest, were voluntary and spontaneous, and, therefore, he did not require *Miranda* warnings. *See id.*

▮ [¶ 12] The search of Leonard's residence is subject to a standard warrant-

---

criminal trespass, 17–A M.R.S.A. § 402(1)(A) (Supp.2001). The jury found Leonard not guilty of the criminal trespass charge. The robbery charges were dismissed by the State after the jury failed to reach a verdict on those charges.

**2.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** Leave to appeal sentence was denied. (SRP–01–42.)

**994**

less search analysis. A warrantless search is, as a matter of law, unreasonable unless: (1) "it is supported by probable cause"; and (2) "exigent circumstances exist requiring a prompt search, without the delay occasioned by the need for a warrant"; or (3) the search is pursuant to another recognized exception to the warrant requirement. *State v. Michael M.,* 2001 ME 92, ¶ 6, 772 A.2d 1179, 1181.

[¶ 13] At the time of the warrantless search of Leonard's residence, the officers certainly had probable cause to believe that evidence of a crime might be found in the search. *See id.* Leonard had just been firing shots at them from the residence. In addition, there was probable cause to believe that evidence of the prior reported robbery might be found on the scene, including, perhaps, the check reportedly taken. Exigent circumstances for the search also existed. *See State v. St. Yves,* 2000 ME 97, ¶ 19 n.8, 751 A.2d 1018, 1023. A stand-off had just occurred and tear gas canisters had been fired into the residence. After the stand-off ended, a search of the residence was proper to determine if: (1) any other individuals were present and perhaps injured or restrained, *see id.;* (2) any other conditions in the residence posed a threat to the safety of persons or property, *see id.;* or (3) there was the potential for loss or destruction of evidence, *State v. York,* 324 A.2d 758, 762–63 (Me.1974). It was appropriate and an exigent circumstance for the officers to assure that a residence into which tear gas canisters had been fired, or where entry had otherwise been forced, would be secure while a warrant was obtained to search the premises further. Thus, the search of the premises immediately after Leonard was taken into custody was supported by both probable cause and exigent circumstances.

[¶ 14] Accordingly, the Superior Court appropriately denied Leonard's motion to suppress the statements that Leonard made and the items observed and seized in both the warrantless and warrant-supported search of his residence.

The entry is:

Judgment affirmed.