In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

STATE OF MISSOURI, ) ED109731
 )
 Respondent, ) Appeal from the Circuit Court of
 ) St. Louis County
v. ) 19SL-CR07249-01
 )
JEFFREY REUTER, ) Honorable Steven R. Ohmer
 )
 Appellant. ) Filed: October 26, 2021

 The State of Missouri (State) appeals from the trial court’s suppression of Jeffrey

Reuter’s (Defendant) statements to a crisis negotiator during a barricaded standoff with police

and to detectives while en route to the police station. We reverse.

 BACKGROUND

 The State charged Defendant with three counts of tampering with a judicial officer,

alleging that Defendant engaged in conduct reasonably calculated to harass or alarm three circuit

court judges by delivering a threatening manifesto to each judge’s residence. St. Louis County

police officers travelled to Defendant’s house in Bonne Terre to execute an arrest warrant.

Officers approached his front door, announced their presence, and requested that Defendant exit

the house. Defendant stated that he would protect himself if the officers came through the door.

The police retreated and surrounded Defendant’s house.
 Detective Chris Koester (Detective Koester) was assigned to “crisis intervention and

crisis negotiations,” and spoke with Defendant over the telephone during an hour-long standoff.

Over the course of their conversation, Defendant frequently alluded to his willingness to defend

himself against officers who might enter his house. Defendant was very upset about how

“judges don’t follow the law,” and how judges did not treat him fairly. Defendant claimed he

had exhausted every avenue to challenge his perceived judicial bias, but nothing worked.

Detective Koester repeatedly asked him to surrender, suggested it would be in the best interest of

his child, and enlisted Defendant’s mother to speak with him to effectuate a peaceful resolution.

 When Defendant surrendered, he was handcuffed and placed into a police vehicle, but he

was not advised of his Miranda 1 rights. Three detectives accompanied Defendant while he was

transported to the police station. The detectives engaged in casual conversation with Defendant

about topics such as football and dentistry. One detective thanked Defendant for his peaceful

surrender. Defendant asked the detectives if they would have eventually made entry into his

house, and a detective answered “yes.” Defendant then volunteered he was glad they did not

because he had a firearm, but he took the magazine out of it prior to exiting the residence.

 Defendant filed a motion to suppress his statements to police, including the statements

through the door, over the telephone, and in the police vehicle, arguing they were obtained by

custodial interrogation in violation of Miranda. After a hearing, the trial court granted

Defendant’s motion to suppress on all his statements to police.

 This appeal follows.

1
 Miranda v. Arizona, 384 U.S. 436 (1966).

 2
 DISCUSSION

 The State raises three points on appeal. First, the State argues the trial court clearly erred

in finding a Miranda violation and suppressing the statements Defendant made to police while he

was in the residence because he was not “in custody.” Second, the State argues the trial court

clearly erred in finding a Miranda violation and suppressing the statements Defendant made to

police while he was in the residence because neither the questioning through the door nor the

telephone crisis negotiation were an “interrogation.” Third, the State argues the trial court

clearly erred in finding a Miranda violation and suppressing the statements Defendant made to

police while he was being transported because the officers did not conduct an “interrogation.”

 Standard of Review

 “The State has ‘the burden at [a] suppression hearing to show by a preponderance of

evidence that [a] motion to suppress should be denied and the evidence should be admitted.’”

State v. Wright, 585 S.W.3d 360, 367 (Mo. App. W.D. 2019) (quoting State v. Brooks, 185

S.W.3d 265, 272 (Mo. App. W.D. 2006)). “[A] trial court's ruling on a motion to suppress will

be reversed only if it is clearly erroneous.” Id. “[A] trial court's ruling is clearly erroneous if this

court is left with a definite and firm belief that a mistake has been made.” Id.

 In applying this standard of review, we defer to the trial court’s factual findings and

credibility determinations, and consider all evidence and reasonable inferences in the light most

favorable to the trial court's ruling. Id. “However, whether the trial court’s factual findings and

reasonable inferences establish that ‘the Fifth Amendment or any other provision of the United

States Constitution [has been] violated is a question of law that this Court reviews de novo.’” Id.

(quoting State v. Stricklin, 558 S.W.3d 54, 61 (Mo. App. E.D. 2018)).

 3
 Point I

 In Point I, the State argues the trial court clearly erred in finding a Miranda violation and

suppressing the statements Defendant made to the crisis negotiator while he was inside the

residence during his standoff with law enforcement. The State asserts Defendant was not yet in

custody because (1) Defendant did not submit to the officers’ authority when they informed him

that they had come to arrest him; (2) Defendant did not open the door and instead avoided arrest

and said he would protect himself if the officers entered the house; (3) while armed, Defendant

remained inside the residence out of reach of the officers, with complete freedom of movement;

(4) Defendant only talked to the police through the door and over the telephone; and (5) the

officers did not arrest or physically seize Defendant or subject him to arrest-like restraints until

after he exited the residence.

 Analysis

 The prosecution may not use statements stemming from custodial interrogation of the

defendant unless it demonstrates the use of procedural safeguards effective to secure the

privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966). “Custodial

interrogation has two components: custody and interrogation.” State v. Little, 604 S.W.3d 708,

716 (Mo. App. E.D. 2020). “Custodial interrogation” means “questioning initiated by law

enforcement officers after a person has been taken into custody or otherwise deprived of his

freedom of action in any significant way.” Miranda, 384 U.S. at 444. Here, both parties agree

Defendant was not informed of his Miranda rights before he made statements to police through

the door of his house and over the telephone. The question is whether Defendant was in custody

when he made such statements.

 4
 “Whether a suspect is in custody is determined by examining the totality of the

circumstances.” State v. Little, 604 S.W.3d 708, 716 (Mo. App. E.D. 2020). Our Supreme Court

has identified several factors relevant to determine whether the totality of the circumstances

establish that a suspect was in custody at the time of questioning: (1) whether the suspect was

informed at the time of questioning that the questioning was voluntary, that the suspect was free

to leave or request the officers to do so, or that the suspect was not under arrest; (2) whether the

suspect possessed unrestrained freedom of movement during questioning; (3) whether the

suspect initiated contact with authorities or voluntarily acquiesced to official requests to answer

questions; (4) whether strong arm tactics or deceptive stratagems were employed during

questioning; (5) whether the atmosphere was police dominated; or, (6) whether the suspect was

placed under arrest at the termination of questioning. State v. Werner, 9 S.W.3d 590, 595 (Mo.

banc 2000). “Although determining custody is not limited to applying the factors listed above,

their presence and absence guide courts in assessing the totality of the circumstances surrounding

interrogations.” Id. at 596.

 This is a case of first impression because we find no Missouri cases addressing whether a

suspect in a barricaded standoff with police officers is in custody for purposes of Miranda.

However, this is not a novel issue, as courts from many other jurisdictions have addressed

whether Miranda requires the suppression of statements by barricaded suspects who have not

been informed of their rights. Regardless of how these courts reach their decisions, all appear to

arrive at the same conclusion: Miranda does not mandate suppression. See e.g., U.S. v. Mesa,

638 F.2d 582, 588-89 (3d Cir. 1980) (no custody); West v. State, 923 P.2d 110 (Ala. App. 1996)

(no custodial interrogation); State v. Stearns, 506 N.W.2d 165 (Wis. App. 1993) (Miranda does

not require suppression); State v. Pejsa, 876 P.2d 963 (Wash. App. 1994) (no custodial

 5
interrogation); Atac v. State, 125 So.3d 806 (Fla. App. 2013) (no custody); State v. Cooper, 949

P.2d 660 (N.M. 1997) (no custodial interrogation); People v. Brewer, 720 P.2d 583 (Co. App.

1985) (no custodial interrogation); State v. Reimann, 870 P.2d 1346 (Kan. App. 1994) (no

interrogation); People v. Treier, 630 N.Y.S.2d 224 (Monroe Cty. Ct. 1995) (no custody; no

interrogation; and fell within exception to Miranda); Com. v. Jones, 683 A.2d 1181 (Pa. 1996)

(no custody; no interrogation); State v. Bowen, 491 N.E.2d 1022 (Ind. App. 1986) (no custodial

interrogation); State v. Leonard, 802 A.2d 991 (Me. 2002) (no custody); State v. Patton, 2001

WL 112074 (Del. Sup. Ct. 2001) (no interrogation); State v. Finch, 975 P.2d 967 (Wash. 1999)

(public safety exception to Miranda applies).

 In analyzing custody for the purpose of Miranda in a standoff situation, the courts

consider whether a suspect: (1) can prevent law enforcement officials from exercising

immediate control over his or her actions; (2) can move freely about the place in which they are

barricaded; (3) is in the physical presence of an interrogating officer; (4) is able to terminate his

or her conversation with police by putting down the phone; and (5) can control the direction of

the conversation by discussing anything he or she wants. See e.g., Pejsa, 876 P.2d at 968 (citing

Mesa, 638 F.2d at 586); Atac, 125 So.3d at 810; Brewer, 720 P.2d at 586.

 A crisis negotiation with a barricaded suspect has been distinguished from the custodial

setting at issue in Miranda. Mesa, 838 F.2d at 586. “[T]he key aspect of the custodial setting as

described in Miranda is the isolation of the suspect in a room that is dominated by the law

enforcement officials who will interrogate him,” which must be guarded against because “the

suspect’s will [is] much more likely to be worn down when he [is] interrogated in an atmosphere

controlled by the police.” Id. at 585-86. However, an armed, barricaded suspect exercises more

control over the situation than an unarmed individual being interrogated in a police station. Id. at

 6
587. The law enforcement officials cannot physically restrain a barricaded suspect and subject

him to whatever psychological techniques they think would be most effective. Id. Additionally,

law enforcement officials do not have the same psychological advantage that is present in

Miranda’s custodial setting because the barricaded suspect can threaten violence to keep the

police at bay. Id. at 586.

 Moreover, the primary goal of crisis negotiators in these circumstances is to peacefully

resolve the standoff, not to collect incriminating evidence for later prosecution. Cooper, 949

P.2d at 667. Negotiators must build rapport with the suspect and obtain his or her trust in order

to accomplish a peaceful resolution. Id. Indeed, if the suspect were to perceive that the crisis

negotiator was asking questions merely seeking to incriminate the suspect, negotiations could

break down and cause the suspect to become extremely dangerous. Id.

 Here, Defendant prevented law enforcement from exercising immediate control over his

actions by threatening the police officers if they entered his house to execute a warrant for his

arrest, effectively barricading himself inside his house. Detective Koester informed Defendant

over the phone that he was under arrest and that the police would not leave the premises until

they retrieved him from the house. The police initiated contact by approaching Defendant’s

house and speaking to him through his door, but they withdrew when Defendant announced that

he would defend himself if they came through the door. The police reinitiated contact multiple

times during the standoff by calling Defendant’s phone. Defendant’s freedom of movement was

confined by the walls of his house. Yet, he was free to walk around inside, and was not subject

to any arrest-like restraints until he exited his residence. He was able to refuse contact with the

police by hanging up the phone at any time, and in fact did so twice during the hour-long

standoff, which gave him control over the direction of his conversations with Detective Koester.

 7
 In attempting to peacefully resolve the situation, Detective Koester enlisted the help of

Defendant’s mother, who spoke to Defendant over the phone and begged him to surrender to the

police. Detective Koester also asked Defendant to surrender for the sake of his child, of whom

he had lost custody in his divorce proceedings. While the atmosphere outside Defendant’s house

was police dominated, Defendant was not subject to domination because he was armed and

inside his house when he spoke to Detective Koester. Defendant ultimately surrendered at the

end of the crisis negotiation and was placed under arrest.

 Considering the totality of the circumstances, we find Defendant was not in custody

during crisis negotiations while in a standoff with law enforcement. Miranda does not require

suppression of his statements to police through the door and over the telephone. Thus, the trial

court clearly erred in granting Defendant’s motion to suppress his statements. Point I is granted.

 We do not address the State’s second point regarding whether the statements through the

door and over the telephone resulted from “interrogation” because the issue is rendered moot by

our conclusion that Defendant was not in custody when he made those statements.

 Point III

 In Point III, the State argues the trial court clearly erred in finding a Miranda violation

and suppressing the statements Defendant made to law enforcement officers while he was being

transported to the police station. The State asserts that the officers did not conduct an

“interrogation” by making statements that the officers should have known were “reasonably

likely to elicit an incriminating response,” in that (1) the officers merely thanked Defendant for

peacefully surrendering and conversed with him about work and sports, (2) Defendant’s

statements were not made in response to any question; and (3) it was Defendant who asked the

 8
officers whether they would have entered the house and who then volunteered information about

the gun and ammunition.

 Analysis

 “‘Interrogation’ under Miranda refers not only to express questioning, but also to any

words or actions on the part of the police (other than those normally attendant to arrest and

custody) that the police should know are reasonably likely to elicit an incriminating response

from the suspect.” Rhode Island v. Innis, 446 U.S. 291, 301 (1980). However, the definition of

interrogation does not extend to statements unexpectedly volunteered by a person in custody. Id.

at 301-02. “‘Interrogation,’ as conceptualized in the Miranda opinion, must reflect a measure of

compulsion above and beyond that inherent in custody itself.” Id. at 300.

 In Innis, the defendant was arrested on suspicion of committing multiple crimes

involving the use of a sawed-off shotgun, but police had not yet located the shotgun. Id. at 293-

94. The defendant was placed in a patrol vehicle and three officers accompanied him en route to

the police station. Id. at 294. During the ride, two of the officers had a conversation in the

presence of the defendant where one officer mentioned that there was a school for handicapped

children nearby, and, “God forbid one of them might find a weapon with shells and they might

hurt themselves.” Id. at 294-95. As the officers discussed their search for the shotgun, the

defendant interrupted and offered to show them where it was located. Id. at 295.

 The United States Supreme Court held that these circumstances did not constitute an

“interrogation” within the meaning of Miranda. Id. at 302. The officers’ conversation between

themselves was clearly not express questioning, nor was the defendant subjected to the

“functional equivalent” by simply being in the presence of the officers’ conversation. Id. The

Court stated, “[t]he case thus boils down to whether, in the context of a brief conversation, the

 9
officers should have known that the respondent would suddenly be moved to make a self-

incriminating response.” Id. at 303. The Court held that the officers had no reason to know the

defendant would so respond, and therefore, their brief remarks did not rise to the level of

“interrogation.” Id.

 Here, similar to Innis, Defendant was in a police vehicle with three detectives when he

made the incriminating statements at issue. However, the detectives merely engaged the

defendant in casual conversation about dentistry, the New England Patriots, and Tom Brady.

One detective thanked Defendant for “coming out after barricading himself” and for “having a

peaceful resolution for what could have [been] much worse.” Defendant asked the detectives if

they would have made entry into his house if he had not surrendered, and a detective responded

affirmatively. Defendant then stated he was glad they did not because he had a 9mm on him, but

had taken the magazine out of the firearm prior to exiting the residence.

 The record clearly shows that Defendant’s statements to the officers were not the product

of an interrogation. Defendant’s voluntary statements were not in response to express

questioning, nor was he subjected to the “functional equivalent” of interrogation. Defendant

argues that the context of surrendering after an intense standoff created an environment where he

was compelled to incriminate himself. We reject this argument and find any compulsion

Defendant perceived in making his statements was not the result of any words or actions from

the detectives, but was merely inherent to custody itself at best. The detective could not

reasonably expect that thanking Defendant for his peaceful surrender would cause Defendant to

volunteer incriminating statements. Thus, the trial court clearly erred in granting Defendant’s

motion to suppress his statements in the police vehicle. Point III is granted.

 10
 CONCLUSION

 The trial court’s order granting Defendant’s motion to suppress is reversed.

 ____________________________________
 Lisa P. Page, Judge

Michael E. Gardner, P.J. and
James M. Dowd, J., concur.

 11